PEOPLE v FYDA

Docket No. 288421. Submitted April 6, 2010, at Detroit. Decided May 18, 2010, at 9:00 a.m.

Theodore S. Fyda was convicted by a jury in the St. Clair Circuit Court, James P. Adair, J., of solicitation of murder and possession of a firearm during the commission of a felony. Defendant appealed, alleging ineffective assistance of counsel, entrapment, and prosecutorial misconduct.

The Court of Appeals *held*:

1. Solicitation to commit murder is a specific intent crime that requires proof that the defendant intended that a murder would in fact be committed. A defendant cannot be found guilty of solicitation to commit murder without a finding of the necessary specific intent, that is, it is necessary to find that there was an actual intent to kill. Intent to inflict great bodily harm or wanton and willful disregard of the recklessness of one's conduct is insufficient to support a conviction of solicitation to commit murder.

2. When it instructed the jury on the elements of solicitation to commit murder, the trial court erred by instructing the jury with regard to the definition of murder that it requires an intent to kill, an intent to do great bodily harm to another person, or an intent to do an act that would create a very high risk of death or great bodily harm knowing that death or great bodily harm would be the likely outcome. Although defense counsel should have objected to the instruction, the error did not influence the outcome of the trial. The evidence showed a level of prior planning by defendant that connoted premeditation. Therefore, it is not reasonably probable that, but for counsel's error, the result would have been different.

3. The actions of the police were insufficient to induce or instigate the commission of a crime by the average person similarly situated to defendant who was not ready and willing to commit it. The police did nothing more than present defendant with the opportunity to commit the crime of which he was convicted, which was insufficient to support defendant's claim of entrapment.

4. Although the prosecutor repeatedly characterized the defense's arguments as a distraction, the prosecutor was not suggesting that defense counsel did not believe defendant. The prosecutor properly addressed the weaknesses of defendant's theory of defense, that is, its singular focus on discrediting the person who informed the police about defendant's desire to hire someone to commit a murder.

5. The prosecution's comments regarding the weakness of defendant's theory of defense was not an attempt to shift the burden of proof to defendant to demonstrate his innocence and did not constitute prosecutorial misconduct.

Affirmed.

1. CRIMINAL LAW — SOLICITATION TO COMMIT MURDER.

Solicitation to commit murder is a specific intent crime that requires proof that the defendant intended that a murder would in fact be committed; the crime of solicitation to commit murder does not include solicitation to inflict great bodily harm or to act with a wanton and willful disregard of the likelihood that one's behavior is likely to cause death or great bodily harm (MCL 750.157b[2]).

2. CRIMINAL LAW — ENTRAPMENT.

Entrapment occurs if the police engage in impermissible conduct that would induce an otherwise law-abiding person to commit a crime in similar circumstances or the police engage in conduct so reprehensible that the court cannot tolerate it; reprehensible conduct alone, without police instigation, can constitute entrapment.

3. CRIMINAL LAW — ENTRAPMENT — IMPERMISSIBLY INDUCED CRIMINAL CONDUCT.

A court considering a defendant's claim of entrapment should consider the following factors in determining whether governmental activity impermissibly induced criminal conduct: (1) whether there existed appeals to the defendant's sympathy as a friend, (2) whether the defendant had been known to commit the crime with which he or she was charged, (3) whether there were any long time lapses between the investigation and the arrest, (4) whether there existed any inducements that would make the commission of a crime unusually attractive to a hypothetical law-abiding citizen, (5) whether there were offers of excessive consideration or other enticement, (6) whether there was a guarantee that the acts alleged as crimes were not illegal, (7) whether, and to what extent, any governmental pressure existed, (8) whether there were sexual favors, (9) whether there were any threats of arrest, (10) whether

there were any governmental procedures that tended to escalate the criminal culpability of the defendant, (11) whether there was police control over any informant, and (12) whether the investigation was targeted.

4. CRIMINAL LAW — PROSECUTORIAL MISCONDUCT — COMMENTS BY PROSECUTOR — VERACITY OF DEFENSE COUNSEL — PRESUMPTION OF INNOCENCE.

A prosecutor must be afforded great latitude regarding his or her arguments and conduct at trial, but a prosecutor may not suggest that defense counsel is intentionally attempting to mislead the jury because such an argument undermines the defendant's presumption of innocence by suggesting that defense counsel does not believe the defendant, thereby impermissibly shifting the focus to the defense counsel's personality.

5. CRIMINAL LAW — PROSECUTORIAL MISCONDUCT — COMMENTS BY PROSECUTOR — PRESUMPTION OF INNOCENCE.

A prosecutor may argue to the jury that the inculpatory evidence is undisputed or that the evidence is uncontradicted, even if the defendant is the only person who could have contradicted the evidence; a prosecutor may not imply during closing argument that the defendant must prove something or must present a reasonable explanation for damaging evidence and may not comment on the defendant's failure to present evidence because such arguments tend to shift the burden of proof.

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, *Michael D. Wendling*, Prosecuting Attorney, and *Timothy K. Morris*, Chief of Appeals, for the people.

*Robin M. Lerg* for defendant.

Before: WHITBECK, P.J., and METER and FORT HOOD, JJ.

PER CURIAM. Defendant, Theodore Fyda, appeals as of right his jury conviction of solicitation of murder[1] and possession of a firearm during the commission of a felony (felony-firearm).[2] The trial court sentenced Fyda

---

[1] MCL 750.157b(2).

[2] MCL 750.227b.

to serve 7 to 15 years in prison for the solicitation conviction, consecutively to 2 years in prison for the felony-firearm conviction. We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

After a 10-year marriage, Fyda and Deborah Cunnellon were divorced in October 2005. Fyda met with his friend, Robert Friederichs, regularly over the course of the subsequent 1½ to 2 years and complained about his divorce. Fyda also often spoke of his desire to kill Cunnellon. Friederichs initially believed that Fyda was just "blowing off steam," but he became concerned when Fyda became more aggressive in his statements after Cunnellon filed a motion seeking to recover $5,900 related to mortgage payments. The motion was scheduled to be heard in October 2007. Friederichs believed that Cunnellon was in danger and contacted local law enforcement officials. Friederichs then worked with the law enforcement officials to arrange a meeting between Fyda and an undercover officer who would be posing as a killer for hire. At this meeting, Fyda asked the officer to "pop" Cunnellon and provided the officer with the following items: a handgun that Fyda portrayed as not traceable, pictures of Cunnellon and her car, Cunnellon's work address, and a $200 down payment on a negotiated contract price of $700. Fyda was arrested at the conclusion of the meeting.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

### A. STANDARD OF REVIEW

Fyda argues that his trial counsel was ineffective for failing to object to the trial court's jury instructions regarding the solicitation-of-murder charge. We review de novo the constitutional question whether an attor-

ney's ineffective assistance deprived a defendant of his or her Sixth Amendment[3] right to counsel.[4] Because the trial court did not conduct an evidentiary hearing, our review of Fyda's challenge to the effectiveness of defense counsel is limited to mistakes apparent on the record.[5]

### B. ANALYSIS

To establish a claim of ineffective assistance of counsel a defendant must show that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense.[6] A counsel's performance was deficient if it fell below an objective standard of professional reasonableness.[7] The performance prejudiced the defense if it is reasonably probable that, but for counsel's error, the result of the proceeding would have been different.[8]

The jury found Fyda guilty of solicitation to commit murder pursuant to MCL 750.157b(2), which provides: "A person who solicits another person to commit murder, or who solicits another person to do or omit to do an act which if completed would constitute murder, is guilty of a felony punishable by imprisonment for life or any term of years." The statute defines solicit as "to offer to give, promise to give, or give any money, services, or anything of value, or to forgive or promise to forgive a debt or obligation."[9] "Solicitation to commit murder is a specific intent crime that requires proof

---

[3] US Const, Am VI.

[4] *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).

[5] *People v Nantelle*, 215 Mich App 77, 87; 544 NW2d 667 (1996).

[6] *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007).

[7] *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007).

[8] *Id.*

[9] MCL 750.157b(1).

that the defendant intended that a murder would in fact be committed."[10] The statute, however, does not define murder or differentiate between degrees of murder.

The trial court's jury instructions regarding the solicitation-of-murder charge were as follows:

> First, that the defendant through words or actions offered, promised, or gave money or anything of value to another person.
>
> Second, that the defendant intended that what he said or did would cause murder to be committed. The crime of murder occurs when:
>
> First, an individual causes the death of another person.
>
> Second, that the individual's state of mind at the time of the killing would have been either, one, an intent to kill, or two, an intent to do great bodily harm to another person, or three, an intent to do an act that would create a very high risk of death or great bodily harm knowing that death or great bodily harm would be the likely outcome.
>
> The prosecutor does not have to prove that . . . the person the defendant solicited actually committed, attempted to commit, or intended to commit murder.

Fyda argues that the trial court's jury instructions defined murder consistently with second-degree murder so that the jury was given the opportunity to convict him without proof that he premeditated and deliberated the solicited murder. More specifically, Fyda argues that because Michigan statutory law does not define the term "murder," it is defined by reference to the common law.[11] And the historical common-law definition of murder is " 'where a person of sound memory and discretion unlawfully kills any reasonable creature in being, in the peace of the state, with malice prepense or

---

[10] *People v Crawford*, 232 Mich App 608, 616; 591 NW2d 669 (1998).

[11] *People v Aaron*, 409 Mich 672, 713-715; 299 NW2d 304 (1980).

aforethought, either express or implied.' "[12] In other words, "malice aforethought is the 'grand criterion' which elevates a homicide . . . to murder."[13] Fyda asserts that "malice aforethought" is synonymous with premeditation and thus implies first-degree murder only.

Contrary to Fyda's assertion, the Michigan Supreme Court has clearly held that malice aforethought, or simply "malice,"[14] "is the intention to kill, the intention to do great bodily harm, or the wanton and willful disregard of the likelihood that the natural tendency of defendant's behavior is to cause death or great bodily harm."[15] These three mental states correspond to three of the four types of murder recognized at common law: "(1) intent-to-kill murder; (2) intent-to-do-serious-bodily-injury murder; [and] (3) depraved-heart murder [wanton and willful disregard that the natural tendency of the defendant's behavior is to cause death or great bodily harm]."[16] Thus, Fyda's argument that "malice aforethought" is synonymous with premeditation and thus implies first-degree murder only is without merit.

However, we conclude that the crime of solicitation to commit murder does not include solicitation to inflict

---

[12] *Id.* at 713, quoting *People v Potter*, 5 Mich 1, 6 (1858).

[13] *Aaron*, 409 Mich at 714, quoting 4 Blackstone, Commentaries (Hammond ed, 1898), p 198; see also *People v Turner*, 213 Mich App 558, 566; 540 NW2d 728 (1995).

[14] *Aaron*, 409 Mich at 714 n 101.

[15] *Id.* at 728; see also *People v Neal*, 201 Mich App 650, 654; 506 NW2d 618 (1993). The *Aaron* Court held "that malice is an essential element of any murder, as that term is judicially defined . . . ." *Aaron*, 409 Mich at 728.

[16] *Aaron*, 409 Mich at 714 (citation and quotation marks omitted; paragraph structure altered). The fourth recognized type of murder at common law was felony murder predicated on the felony-murder doctrine. *Id.* However, *Aaron* abrogated the common-law felony-murder doctrine. *Id.* at 733.

great bodily harm or to act with a wanton and willful disregard of the likelihood that the natural tendency of one's behavior is to cause death or great bodily harm.

In *People v Taylor*,[17] the Michigan Supreme Court considered the intent required to support a finding that a defendant committed assault with intent to commit murder. MCL 750.83 provides that "[a]ny person who shall assault another with intent to commit the crime of murder, shall be guilty of a felony, punishable by imprisonment in the state prison for life or any number of years." But like the statute prohibiting solicitation to commit murder, the statute prohibiting assault with intent to commit murder does not define murder. Therefore, the *Taylor* Court first acknowledged that there generally are "several intents which can support a murder conviction. There can be an intent to kill, an intent to inflict great bodily harm, or a wanton and wilful disregard of the likelihood that the natural tendency of the actor's behavior is to cause death or great bodily harm."[18] But citing *Maher v People*,[19] the *Taylor* Court concluded that in the context of assault with intent to commit murder, "it is necessary to find that there was an actual intent to kill."[20]

In *Maher*, the Court considered whether the evidence supported the charge of assault with intent to commit murder and explained that the answer

> must depend upon the question whether the proposed evidence would have tended to reduce the killing—had death ensued—from murder to manslaughter, or rather, to have given it the character of manslaughter instead of murder[.] If the homicide—in case death had ensued—would have been

---

[17] *People v Taylor*, 422 Mich 554; 375 NW2d 1 (1985).

[18] *Id.* at 567, citing *Aaron*, 409 Mich at 722.

[19] *Maher v People*, 10 Mich 212 (1862).

[20] *Taylor*, 422 Mich at 567.

but manslaughter, then defendant could not be guilty of the assault *with intent to murder*, but only of a simple assault and battery. The question therefore involves essentially the same principles as where evidence is offered for a similar purpose in a prosecution for murder; except that, in some cases of murder, an actual intention to kill need not exist; but in a prosecution for an assault *with intent* to murder, the actual intention to kill must be found, and that under circumstances which would make the killing murder.[21]

Citing *Taylor*, this Court in *People v Cochran* clarified that

[s]pecific intent to kill is the only form of malice which supports the conviction of assault with intent to commit murder. Intent to inflict great bodily harm or wanton and wilful disregard of the recklessness of one's conduct is insufficient to support a conviction for assault with intent to commit murder.[22]

Similarly, this Court in *People v Lipps* stated:

Because the offense is a specific intent crime, a defendant cannot be found guilty of it if conditions were such as to preclude the forming of the necessary intent. . . . [I]f a defendant would have been guilty of manslaughter had the assault resulted in death (due to an absence of malice), there can be no conviction of assault with intent to murder. [23]

Although these cases dealt with the crime of assault with intent to commit murder, the same rationale applies here. As stated, "[s]olicitation to commit murder is a specific intent crime that requires proof that the defendant intended that a murder would in fact be

---

[21] *Maher*, 10 Mich at 216-217.

[22] *People v Cochran*, 155 Mich App 191, 193-194; 399 NW2d 44 (1986) (citations omitted).

[23] *People v Lipps*, 167 Mich App 99, 106; 421 NW2d 586 (1988) (citations omitted).

committed."[24] Therefore, we conclude that a defendant
cannot be found guilty of solicitation to commit murder
without a finding of the necessary specific intent. That
is, it is necessary to find that there was an actual intent
to kill. Intent to inflict great bodily harm or wanton and
wilful disregard of the recklessness of one's conduct is
insufficient to support a conviction of solicitation to
commit murder.[25]

Accordingly, we conclude that the trial court's in-
structions to the jury on the elements of solicitation to
commit murder were incorrect and that defense counsel
should have objected. However, we also conclude that
this error did not influence the outcome of the trial.
There was consistent testimony that Fyda requested
that Cunnellon, whom he identified with pictures, be
killed with a handgun that Fyda supplied, using time
and location information that Fyda supplied, for a price
that Fyda partially paid. These events indicate a level of
prior planning that connoted premeditation. Thus, it

---

[24] *Crawford*, 232 Mich App at 616.

[25] Accord *People v Knasiak*, unpublished opinion per curiam of the
Court of Appeals, issued July 2, 1999 (Docket No. 203826), p 5 (conclud-
ing that there is no such offense as solicitation to commit second-degree
murder).

> Solicitation . . . involves actual advance planning and fore-
> knowledge, as is reflected by the solicitor's deciding to have some
> criminal act performed by a third party on the solicitor's behest,
> searching out an individual to engage in a criminal act, and acting
> to engage the third party to commit the criminal act. Further, the
> solicitation statute . . . punishes the actual advance planning and
> the acts taken in preparation for committing the substantive-
> criminal acts and not the carrying out of the planned criminal
> acts. . . . [T]he planning involved in solicitation connotes premedi-
> tation and deliberation. Accordingly, solicitation of murder shares
> the elements of premeditation and deliberation with first-degree
> murder. As such, solicitation of murder is inconsistent with
> second-degree murder for the same reason that conspiracy is
> inconsistent with second-degree murder, that being that "one does
> not 'plan' to commit an 'unplanned' substantive crime." [*Id.* at 5-6
> (citations omitted).]

cannot be said that defense counsel's failure to object prejudiced Fyda's case; that is, it is not reasonably probable that, but for counsel's error, the result of the proceeding would have been different.[26]

### III. ENTRAPMENT

#### A. STANDARD OF REVIEW

Fyda argues that the trial court incorrectly concluded that the police did not entrap him. Fyda argues that the police exploited a friendship between Fyda and Friederichs, a longstanding police informant, to induce Fyda into soliciting the officer to kill Cunnellon.

Whether entrapment occurred is determined by considering the facts of each case and is a question of law for this Court to decide de novo.[27] The trial court must make specific findings regarding entrapment, and this Court reviews its findings under the clearly erroneous standard.[28] The findings are clearly erroneous if this Court is left with a firm conviction that a mistake was made.[29]

#### B. ANALYSIS

Entrapment occurs if (1) the police engage in impermissible conduct that would induce an otherwise law-abiding person to commit a crime in similar circumstances or (2) the police engage in conduct so reprehensible that the court cannot tolerate it.[30] Reprehensible conduct alone, without police instigation, can constitute entrapment.[31]

---

[26] See *Taylor*, 275 Mich App at 186.

[27] *People v Milstead*, 250 Mich App 391, 397; 648 NW2d 648 (2002).

[28] *Id.*

[29] *Id.*

[30] *People v Sexton*, 250 Mich App 211, 217; 646 NW2d 875 (2002).

[31] *People v Fabiano*, 192 Mich App 523, 529; 482 NW2d 467 (1992).

In *People v Johnson*,[32] the Michigan Supreme Court enumerated the following factors for a court to consider when examining whether governmental activity would impermissibly induce criminal conduct:

> (1) whether there existed appeals to the defendant's sympathy as a friend, (2) whether the defendant had been known to commit the crime with which he was charged, (3) whether there were any long time lapses between the investigation and the arrest, (4) whether there existed any inducements that would make the commission of a crime unusually attractive to a hypothetical law-abiding citizen, (5) whether there were offers of excessive consideration or other enticement, (6) whether there was a guarantee that the acts alleged as crimes were not illegal, (7) whether, and to what extent, any government pressure existed, (8) whether there existed sexual favors, (9) whether there were any threats of arrest, (10) whether there existed any government procedures that tended to escalate the criminal culpability of the defendant, (11) whether there was police control over any informant, and (12) whether the investigation was targeted.

Friederichs testified that he felt a sense of urgency after Fyda reiterated his desire to kill Cunnellon following her initiation of postjudgment proceedings in October 2007. It was then that he approached the police. The undercover officer who dealt with Friederichs stated that Friederichs told the officer that Fyda "made mention of a stolen gun" and paying $500 to the "would-be murderer," and that Fyda told Friederichs that if the subject was again brought up, Friederichs should inform Fyda that he found someone interested in being hired. Eventually, Friederichs facilitated the scheduling of a meeting between Fyda and the officer.

The officer testified that as he talked with Fyda alone on October 22, 2007, Fyda spoke of preferring a man

---

[32] *People v Johnson*, 466 Mich 491, 498-499; 647 NW2d 480 (2002).

from Detroit and of a different race to do the job near Cunnellon's work because he wanted it to look like a carjacking to which Fyda did not have any connection. The officer stated that Fyda provided him with photos of Cunnellon and her car, her work address, and a handgun that Fyda stated was untraceable. The officer stated that Fyda also suggested killing Cunnellon after the upcoming court date so it would be less suspicious.

We conclude that the police did not exploit the long-existing friendship between Fyda and Friederichs to manufacture a crime. They were involved only because Friederichs brought to their attention Fyda's threats and desire to hire someone to harm Cunnellon. The police did not approach or use Friederichs because of his friendship with Fyda. Instead, Friederichs approached the police because of his concern that Fyda's threats against Cunnellon had been exacerbated by circumstances. There is no indication that Friederichs appealed to any sense of sympathy Fyda might have had for him or that the police instigated procedures that would have likely escalated Fyda's culpability. While Fyda was the target of the investigation, he was made so by his own actions. Further, the police were only involved with Fyda for five days after Friederichs contacted them, with no lapses in time between the investigation and the arrest.

Fyda argues that he was offered an inducement that would make the commission of this crime unusually attractive to a law-abiding citizen. Specifically, Fyda asserts that an affordable $700 price was his improper inducement. The officer stated that Friederichs told him that Fyda offered to provide a stolen gun and $500 to have Cunnellon murdered. The officer described Fyda as being hesitant at their meeting about the initial $1,000 demand that the officer made, but stated that

they eventually settled on a $700 price. That the officer was willing to negotiate the price cannot be said to be an attractive inducement for an otherwise law-abiding citizen to ask that Cunnellon be murdered.

Fyda also argues that Friederichs was motivated by personal benefit; that is, in return for acting as a confidential informant for the police, Friederichs received favorable resolution of outstanding unpaid traffic tickets that could have resulted in significant jail time for Friederichs. Friederichs acknowledged that his possible jailing coincided with and influenced his concern in reporting Fyda. However, Friederichs also said that he was motivated by his desire to save Cunnellon's life and that he felt a sense of urgency after seeing Fyda's reaction to the postdivorce hearing regarding the mortgage payments. Additionally, no matter what motivated Friederichs or the extent of inducement provided to him, the facts remain that Fyda had been plainly and specifically speaking to him about finding someone to murder Cunnellon and that Fyda had an independent meeting with the officer at which he freely made the same request.

Fyda further argues that a degree of governmental pressure was placed on him through Friederichs, who was motivated to stay out of jail and was not sufficiently supervised by the police. As discussed above, there was no evidence that Friederichs's admitted desire to stay out of jail somehow pressured Fyda to solicit the murder of Cunnellon. The fact that more direct supervision through documenting Fyda's conversations with Friederichs was possible (for example, audio recordings), does not mean that Friederichs was operating without supervision. In fact, the officer involved testified that he gave Friederichs specific instructions on how to approach and talk to Fyda. The officer also

monitored Fyda and Friederichs's conversation through Friederichs's cell phone as they drove in Friederichs's truck on the way to meet with the officer.

In sum, the police actions were "insufficient to induce or instigate the commission of a crime by the average person, similarly situated to [defendant], who [was] not ready and willing to commit it."[33] The record shows that the police did "nothing more than present the defendant with the opportunity to commit the crime of which he was convicted," which is insufficient to support a finding of entrapment.[34]

### IV. PROSECUTORIAL MISCONDUCT

### A. STANDARD OF REVIEW

Fyda argues that the prosecutor committed misconduct by denigrating the defense and improperly shifting the burden of proof. Fyda preserved his burden-shifting argument when his defense counsel objected on the record;[35] however, he forfeited his "denigrating the defense" argument by failing to object.[36]

We generally review de novo claims of prosecutorial misconduct on a case-by-case basis, in the context of the issues raised at trial, to determine whether a defendant was denied a fair and impartial trial.[37] This Court, however, reviews forfeited claims of allegedly improper

---

[33] *People v Juillet*, 439 Mich 34, 55; 475 NW2d 786 (1991) (opinion by BRICKLEY, J.)(citation, quotation marks, and emphasis omitted).

[34] *Sexton*, 250 Mich App at 220 (citation and quotation marks omitted).

[35] *Brown v Loveman*, 260 Mich App 576, 599; 680 NW2d 432 (2004) (stating that to preserve an issue for appeal, it must be raised by a party and addressed by the trial court).

[36] *People v Carter*, 462 Mich 206, 216; 612 NW2d 144 (2000) (stating that defense counsel's failure to object qualifies as a forfeiture).

[37] *People v Brown*, 267 Mich App 141, 152; 703 NW2d 230 (2005).

conduct by the prosecutor for plain error that affected
the defendant's substantial rights.[38] Reversal is war-
ranted only when plain error resulted in the conviction
of an actually innocent defendant or seriously affected
the fairness, integrity, or public reputation of judicial
proceedings.[39]

### B. DENIGRATING THE DEFENSE

Fyda argues that the prosecutor's remarks charac-
terizing the defense as "a defense of distraction" imper-
missibly denigrated the defense by suggesting that
defense counsel was being disingenuous in questioning
Friederichs's credibility.

A prosecutor is afforded great latitude regarding his
or her arguments and conduct at trial.[40] But the pros-
ecutor may not suggest that defense counsel is inten-
tionally attempting to mislead the jury.[41] This prohibi-
tion is based on the negative effect such an argument
has on the presumption of innocence:

> When the prosecutor argues that the defense counsel
> himself is intentionally trying to mislead the jury, he is in
> effect stating that defense counsel does not believe his own
> client. This argument undermines the defendant's pre-
> sumption of innocence. Such an argument impermissibly
> shifts the focus from the evidence itself to the defense
> counsel's personality.[42]

Fyda argued throughout the trial that Friederichs
could not be believed and had manipulated Fyda into

---

[38] *People v Odom*, 276 Mich App 407, 413; 740 NW2d 557 (2007); *People
v Barber*, 255 Mich App 288, 296; 659 NW2d 674 (2003).

[39] *Odom*, 276 Mich App at 413.

[40] *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008).

[41] *Id.*

[42] *People v Wise*, 134 Mich App 82, 102; 351 NW2d 255 (1984) (citation
omitted).

soliciting the officer so that Friederichs could avoid jail time for his traffic tickets. When a defendant advances a theory, the prosecutor may argue the inferences flowing from that theory.[43] Although the prosecutor here repeatedly characterized the defense's arguments as a distraction, the prosecutor was not suggesting that defense counsel did not believe Fyda. Rather, the prosecutor's comments properly addressed the weaknesses of Fyda's theory of defense—that is, its singular focus on discrediting Friederichs.[44] Further, the prosecutor's comments were responsive to Fyda's arguments regarding Friederichs that were made throughout the trial.[45] The fact that the prosecutor employed colorful rhetoric does not make the response to Fyda's arguments disproportionate.[46]

Fyda has not demonstrated any plain error that resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings.[47]

### C. SHIFTING THE BURDEN OF PROOF

Fyda also argues that the prosecutor impermissibly shifted the burden of proof onto Fyda during closing arguments by suggesting that Fyda had to prove a defense to the charges. During rebuttal closing remarks, the prosecutor commented:

> And when you think about the arguments that the defense has raised in this case, these defenses of distraction, ask yourself: How many times, how many times

---

[43] *People v Reid*, 233 Mich App 457, 477; 592 NW2d 767 (1999).

[44] See *People v McGhee*, 268 Mich App 600, 635; 709 NW2d 595 (2005).

[45] See *People v Dobek*, 274 Mich App 58, 64; 732 NW2d 546 (2007).

[46] *People v Jones*, 468 Mich 345, 354; 662 NW2d 376 (2003).

[47] *Odom*, 276 Mich App at 413.

during this case, during this closing argument, how much time was spent criticizing or name-calling Robert Friederichs? How much time did the defense defend what the defendant did? You never heard any argument during closing argument that, gees, defendant never presented a gun. Defendant never asked [the officer] to murder his wife. My client never provided the pictures. You never heard any of that. There's been no defense to the crime itself. Only the defenses of distraction.

The trial court stated that it was "alarmed" by the prosecutor's use of the word "defend," then ruled as follows:

I felt that it was not in the context of her argument . . . presented in such a way that would be misleading to the jury and/or, or that would do anything more than perhaps compound a possible difficulty in, in instructing the jury . . . when they already have had several references by the court properly, so to point out to them that the defendant does not have any of that burden, that in effect [defense counsel], correctly so in his arguments, suggested . . . he didn't even have to do anything, he could take off and go and have lunch, I don't remember exactly what words, but all of that gives, you know, the court at least the comfort to suggest that the jury has had sufficient instructions to understand that the burden, none of that burden is . . . on the defendant; that the entire burden is on the prosecutor. Although the prosecutor . . . used that word, and I'm—really apologize because I can't remember precisely whether it was defend or defense, but it was, you know, a, a form of the word defend that, that caught my attention, but as I've already indicated in the context, in my resolution in my own mind at that time, I do not find that in the law it creates any error that would cause the court to, to modify or, or, or, or give a different instruction before the jury returns.

A prosecutor may not imply in closing argument that the defendant must prove something or present a reasonable explanation for damaging evidence because

such an argument tends to shift the burden of proof.[48] Also, a prosecutor may not comment on the defendant's failure to present evidence because it is an attempt to shift the burden of proof.[49] However, a prosecutor's argument that inculpatory evidence is undisputed does not constitute improper comment.[50] A prosecutor may also argue that the evidence was uncontradicted even if the defendant is the only person who could have contradicted the evidence.[51]

Although we conclude that the prosecutor's remarks did not impermissibly shift the burden to Fyda to demonstrate his innocence, we share the trial court's unease with those remarks. The statement, "There's been no defense to the crime itself. Only the defenses of distraction," appears to suggest that Fyda has a burden to provide a "defense to the crime" charged. However, the remark must be considered in the context of the whole closing arguments and in consideration of Fyda's arguments.[52] As discussed above, Fyda's primary theory of defense was that Friederichs had manipulated the system for his own benefit and influenced Fyda to solicit the officer. Even though the prosecutor used the word "defense," the statement in question directly attacks Fyda's theory and highlights that evidence of the interaction between Fyda and the officer was not disputed. Attacking the credibility of the theory advanced by Fyda did not shift the burden of proof.[53] The prosecutor's statements were proper commentary on the weaknesses of Fyda's theory of defense and did not

---

[48] *People v Green*, 131 Mich App 232, 237; 345 NW2d 676 (1983).

[49] *People v Abraham*, 256 Mich App 265, 273; 662 NW2d 836 (2003).

[50] *People v Callon*, 256 Mich App 312, 331; 662 NW2d 501 (2003).

[51] *Green*, 131 Mich App at 237.

[52] *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004).

[53] See *Callon*, 256 Mich App at 331.

constitute prosecutorial misconduct.[54] Moreover, the trial court instructed the jury after closing arguments that the burden of proof was on the prosecution to prove each element beyond a reasonable doubt, that Fyda was not required to prove his innocence or do anything, and that the lawyers' statements were not evidence. We must presume that the jury followed these instructions.[55]

We affirm.

[54] See *McGhee*, 268 Mich App at 634-635.

[55] *Unger*, 278 Mich App at 235.