# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

RHYON DRAMON WALKER,

       Defendant-Appellant.

UNPUBLISHED
December 9, 2014

No. 314960
Clinton Circuit Court
LC No. 12-008989-FC

Before: STEPHENS, P.J., and HOEKSTRA and METER, JJ.

PER CURIAM.

Defendant appeals as of right from his convictions, following jury trial, of one count of armed robbery, MCL 750.529; one count of assault with intent to commit armed robbery, MCL 750.89; one count of carrying a concealed weapon (CCW); MCL 750.227, and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced him to concurrent prison terms of 115 to 360 months for armed robbery, 115 to 360 months for assault with intent to commit armed robbery, 24 to 60 months for CCW, and 24 months for each felony-firearm conviction. We affirm.

Defendant and one of the complainants, Delbert Crawford, were casual acquaintances. According to defendant, he had arranged with Crawford to meet him at his apartment on September 19, 2012, so that defendant could purchase marijuana from Crawford. Crawford disputed this account and testified that they had planned only to smoke marijuana together. Crawford testified that defendant arrived at his apartment on September 19 with another man, whom he did not recognize, and that both men were carrying handguns. According to Crawford, the unknown man pointed his gun at Crawford, after which Crawford "tussled" with the man. During the struggle, Crawford testified, he was knocked to the ground. According to Crawford, defendant then entered the apartment and walked around to "secure" it. While defendant was securing the apartment, Crawford's roommate, Zach Converse, emerged from a bathroom and encountered defendant, who ordered him to the ground, according to Converse. Crawford testified that defendant's accomplice reached into Crawford's pocket and took $300 in cash and Crawford's cellular telephone, and then both men left.

Defendant claimed that he had arrived at Crawford's apartment by himself, without incident and with no firearm. According to defendant, Crawford measured out an amount of marijuana for him that was less than the quarter pound they had agreed upon. Defendant

-1-

testified that when he asked Crawford to make the amount "right," Crawford told him to wait and went into a back room. While Crawford was gone, according to defendant, he took Crawford's marijuana, hiding it beneath his shirt, and walked out of the apartment.

Defendant argues on appeal that he is entitled to resentencing because the trial court wrongly scored offense variables (OVs) 7 and 14. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013) instructs:

> Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo. [Citation omitted.]

At sentencing, defendant objected to the scoring of OV 7 at 50 points. See MCL 777.37(1)(a). The court found that the score was appropriate based on testimony that a gun had been pointed at a victim's head. According to the court, this "conduct . . . would substantially increase the fear and anxiety to a victim who had suffered from the offense . . . ." The prosecution does not contend on appeal that defendant's actions constituted "sadism, torture, or excessive brutality," but rather that his conduct was "designed to substantially increase the fear and anxiety" of the victim during the offense. See *id*. (indicating the appropriate conditions for assessing 50 points under OV 7).

The Michigan Supreme Court considered this issue in *Hardy*, 494 Mich at 442-443:

> [W]e agree with the Court of Appeals that "[a]ll . . . crimes against a person involve the infliction of a certain amount of fear and anxiety." Since the "conduct designed" category only applies when a defendant's conduct was designed to substantially *increase* fear, to assess points for OV 7 under this category, a court must first determine a baseline for the amount of fear and anxiety experienced by a victim of the type of crime or crimes at issue. To make this determination, a court should consider the severity of the crime, the elements of the offense, and the different ways in which those elements can be satisfied. Then the court should determine, to the extent practicable, the fear or anxiety associated with the minimum conduct necessary to commit the offense. Finally, the court should closely examine the pertinent record evidence, including how the crime was actually committed by the defendant. As noted above, evidence which satisfies an element of an offense need not be disregarded solely for that reason. Instead, all relevant evidence should be closely examined to determine whether the defendant engaged in conduct beyond the minimum necessary to commit the crime, and whether it is more probable than not that such conduct was intended to make the victim's fear or anxiety increase by a considerable amount. [Emphasis in original; citations omitted.]

In *Hardy*, during the course of a carjacking, the defendant pointed a shotgun at the victim and racked it. *Id*. at 444. The Court noted that although an element of the offense of carjacking is to

put in fear any operator, passenger, or person in lawful possession of the motor vehicle while committing larceny of the vehicle, the defendant took the "extra step" of racking his shotgun, "even though merely displaying the weapon or pointing it at the victim would have been enough to issue a threat." *Id*. at 444-445. Based on the defendant's "extra step," the Court found that the circuit court had correctly scored 50 points for OV 7 because defendant's conduct "was designed to substantially increase the victim's fear beyond the usual level that accompanies a carjacking . . . ." *Id*. at 445.

In the instant case, the prosecution argues that defendant's conduct fulfilled the "extra step" requirement of *Hardy* and went beyond the mere fulfillment of the elements of the offense. The trial court found that the act of pointing a deadly weapon at a victim's *head* was "conduct that would substantially increase the fear and anxiety [of] a victim who had suffered from the offense . . . ."

A defendant is guilty of armed robbery if

(1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon. [*People v Chambers*, 277 Mich App 1, 7; 742 NW2d 610 (2007); see MCL 750.529 and MCL 750.530.]

Converse testified that he became "[e]xtremely afraid" because of defendant's conduct during the commission of the offense. He testified that he was "confronted with a gun to [his] head" and that defendant aimed the gun "directly at [Converse's] forehead," with only two or three inches between the gun and the forehead. He testified that when defendant told him to get on the ground, Converse "knew he wasn't messing around, he was serious." The evidence that defendant pointed a gun so close to a victim's forehead supports the conclusion that conduct occurred that was designed to substantially increase the fear and anxiety to a victim beyond the baseline fear associated with the offense. We find no basis for reversal.

OV 14 governs the offender's role in the commission of the offense, and provides that ten points should be scored where there is evidence that "the offender was a leader in a multiple offender situation[.]" MCL 777.44(1)(a). Defense counsel argued below that because defendant testified that he acted alone, the court should have scored this variable at zero points. The court found that the score was appropriate based on the jury's apparent finding that the victims' versions of the events were credible.

Defendant had made an appointment to meet Crawford at his apartment. Crawford testified that he did not know the other assailant who acted in concert with defendant. Presumably, therefore, the second assailant knew to target Crawford through defendant. Defendant also testified that he drove his car to Crawford's apartment complex and an eyewitness testified that she saw two men running toward a car in the parking lot that fit the

-3-

description of defendant's car. Based on this evidence, it was not an abuse of discretion for the trial court to assess 10 points for OV 14.

Defendant argues that the evidence offered by the prosecutor to prove that he was carrying a weapon during the offense was circumstantial and was insufficient to support his conviction for CCW.[1] However, the jury evidently believed the testimony of Converse and Crawford that defendant was carrying a gun while he was in their apartment. In addition, another witness testified that, around the time of the incident, she saw two men with "something in their shirts" enter a vehicle consistent with the description of defendant's vehicle and leave at a quick speed. The evidence was sufficient to support the conviction and defendant is not entitled to relief on this issue. See *People v Herndon*, 246 Mich App 371, 415; 633 NW2d 376 (2001) (discussing the standard of review for sufficiency claims and noting that circumstantial evidence may be used to prove elements of a crime).

In his Standard 4 brief, defendant argues that the prosecutor committed misconduct during his closing argument when he allegedly mischaracterized defendant's testimony, appealed to the jury's sympathy, made a "personal attack" on defense counsel, and appealed to the jury's sense of civic duty. Defense counsel objected to the prosecutor's comment during closing argument that defendant had admitted to "committing a robbery," which is at the heart of defendant's assertion that the prosecutor mischaracterized defendant's testimony. Defendant did not, however, object to the other comments he raises as improper on appeal. Therefore, this issue is preserved only with regard to whether the prosecutor argued facts not in evidence.

We review de novo preserved claims of prosecutorial misconduct, viewing the prosecutor's conduct in context to determine whether the defendant was denied a fair and impartial trial. *People v Fyda*, 288 Mich App 446, 460; 793 NW2d 712 (2010). Unpreserved issues are reviewed for plain error affecting substantial rights. *People v Pipes*, 475 Mich 267, 278; 715 NW2d 290 (2006).

In *People v Dobek*, 274 Mich App 58, 63-64; 732 NW2d 546 (2007), this Court explained that "[a] defendant's opportunity for a fair trial can be jeopardized when the prosecutor interjects issues broader than the defendant's guilt or innocence."

> Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context. . . . A prosecutor's comments are to be evaluated in light of defense arguments and the

---

[1] The statute governing CCW provides, in relevant part:

> A person shall not carry a pistol concealed on or about his or her person, or, whether concealed or otherwise, in a vehicle operated or occupied by the person, except in his or her dwelling house, place of business, or on other land possessed by the person, without a license to carry the pistol as provided by law[.] [MCL 750.227(2).]

relationship the comments bear to the evidence admitted at trial. Otherwise improper prosecutorial conduct or remarks might not require reversal if they address issues raised by defense counsel. [*Id*. at 64 (citation omitted).]

During closing argument, the prosecutor stated that defendant, "for the first time [today has] . . . admitted to committing a robbery." The trial court allowed the statement over defense counsel's objection that it was not consistent with the evidence. The prosecutor then explained that "[t]he testimony of the Defendant is I grabbed a quarter pound of marijuana and ran out the door. That's a robbery. I didn't have a gun when I did it, . . . but I took this marijuana." Defendant claims that the prosecutor's statements were "completely to the contrary" of defendant's testimony: "[T]he defendant testified that [Crawford] went to the back room and at that point he looked around and grabbed the marijuana, put it under his shirt and walked out. He also stated that he never possessed a weapon . . . ."

Defendant's paraphrase of his testimony is not appreciably different from the prosecutor's characterization of it during closing argument, nor is it appreciably different from defendant's actual testimony at trial. Further, the jurors were instructed that they "must think about what the facts of this case are." "The lawyers' statements and arguments . . . are not evidence," the court continued, later adding, "You should only accept things that lawyers say that are supported by the evidence . . . ." "It is well established that jurors are presumed to follow their instructions." *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). Reversal is unwarranted.

Defendant also asserts that the prosecutor improperly appealed to the jury's sympathy when he made the following statements while recounting the victims' testimony during closing argument: "[A]t some point Zach Converse comes out of his room. Bless his heart, Zach Converse is not the smartest person I've ever seen sit in that chair." Defendant also objects to the following comments made by the prosecutor during rebuttal argument:

> [Converse is] not the sharpest tool in the shed. He has trouble dealing with those sorts of issues and articulating them. And then you just look at him and judge when [sic] sort of person he is. When this was all over, the safest place for him to be was in his bathroom. He's a little rabbit of a person.

According to defendant, "[o]ne could infer from [this] statement that [Converse] was v[u]lnerable and could be taken advantage of, thus insinuating that [he] needed the jurors [sic] sympathy."

Viewing the prosecutor's comments in the context of the rest of his closing argument, there is no indication that he was trying to elicit sympathy for Converse from the jury. The prosecutor's argument did not paint Converse as a vulnerable individual who could be easily victimized, as defendant argues, but rather as a marijuana user who may or may not be a believable witness. The prosecutor told the jury:

> Converse admitted from the get go he was smoking marijuana, which is not an unusual thing in a student apartment down in that area. . . . But he just comes out of his room and this happens to him and he's put on the ground. And

his testimony was somewhat different from Crawford's, as it would be. And you have to weigh his testimony. You say was he telling us the truth? And you have to decide if he's telling you the truth.

The prosecutor's comments regarding Converse's intelligence may not have been particularly relevant, but it does not seem that they were unduly prejudicial to defendant. Indeed, the prosecutor's comments seem almost derisive. The jury had the opportunity to observe Converse during his testimony and could make its own assessment about him, including his level of intelligence, and decide whether he was a credible witness. Reversal is not warranted.

Next, defendant argues that the prosecutor prejudiced the defense by making a personal attack on defense counsel. According to defendant, the following statements by the prosecutor were improper: "[Defense counsel] is very good at what he does, he's been a defense attorney a long time. Part of the objective of the defense is to get the Defendant out of trouble—not part of it, that's the total thing—get the Defendant out of trouble." Defendant claims that these comments improperly shifted the burden of proof. We disagree. The comments were a straightforward characterization of the goal of the defense: to acquit defendant of the charges against him. The prosecutor's characterization of the purpose of the defense as being to get defendant "out of trouble" does not reflect negatively on defense counsel's character—it merely encapsulates the role of counsel in these criminal proceedings. Defendant's argument concerning this issue is not persuasive.

Defendant argues that the prosecutor improperly appealed to the jurors' sense of civic duty during his rebuttal argument. Specifically, defendant takes issue with the following statements: "There are things you've got to ask yourself—and maybe this is me, . . . but I live in Flint and I got to come to Lansing to buy marijuana? Really? There's no marijuana in Flint?" Later, the prosecutor stated, "What you have to remember is we have an armed robbery in Bath, in a student apartment complex." Defendant argues that the prosecutor was essentially stating that defendant "had no business" being at the apartment complex in Bath and should have stayed in Flint.

"A prosecutor is afforded great latitude regarding his or her arguments and conduct at trial." *Fyda*, 288 Mich App at 461. However, "it is improper for a prosecutor to appeal to the jury's civic duty by injecting issues broader than guilt or innocence or encouraging jurors to suspend their powers of judgment." *People v Thomas*, 260 Mich App 450; 456-457; 678 NW2d 631 (2004). We do not find the above comments to be an appeal to the jury's sense of civic duty. The prosecutor was not saying that defendant should be punished because he lives in Flint or because the jury needs to stop people coming from Flint to Lansing, or that the jury should go out of its way to make sure it protects students living together is an apartment complex.

Defendant's argument takes the prosecutor's statements out of context. The prosecutor argued during his closing that defendant's assertion that he drove "all the way over" to Lansing from his residence in Flint to buy marijuana was not credible. The prosecutor further suggested that defendant's testimony that he was unarmed while purchasing large quantities of drugs was not credible: "And I've got my money, but I don't carry a gun, I just buy my quarter pounds of marijuana and go around unarmed . . . that's the testimony." The prosecutor's statements were

intended to show that defendant was not a credible witness. They were not an appeal for the jury to act out of some sense of civic duty to the greater Lansing community.[2]

Defendant also raises in his Standard 4 brief the argument that he was denied his right to a fair trial when the trial court permitted the prosecutor to ask leading questions at one point during trial. "The decision whether to admit evidence is within the trial court's discretion, which will be reversed only where there is an abuse of discretion." *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010).

Defendant argues that his right to a fair trial was compromised when the trial court permitted the prosecutor to ask Converse leading questions during redirect examination. While discussing the transcript of Converse's testimony at defendant's preliminary examination, the prosecutor and Converse engaged in the following exchange:

> *Prosecutor*: What part of this event did that transcript represent?
>
> *Witness*: The beginning of the incident that happened on September 19th.
>
> *Prosecutor*: And was that when you were told to get the F on the ground?
>
> *Witness*: Yes, sir.
>
> *Prosecutor*: And this is from that point on?
>
> *Defense counsel*: You're leading again, Your Honor.
>
> * * *
>
> *Court*: I'm going to overrule the objection, just to expedite matters.

Defendant asserts that the court acted improperly because "instead of going by law which does not allow leading questions, the court erred in deciding to overrule just to speed up the trial." Defendant claims that the court's ruling denied defense counsel the opportunity to impeach the witness through prior inconsistent statements and denied defendant his constitutional right to confront the witness.

MRE 611(d)(1) provides that "[l]eading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness' testimony." However, this Court has held that reversal is not required simply because leading questions were

---

[2] It appears that the prosecutor's statement about the "student apartment complex" was intended to put into context the fact that Converse was "matched up" to Crawford in an apartment-sharing arrangement (they did not know each other before becoming roommates) and therefore subjected to danger by virtue of Crawford's association with defendant. The prosecutor also seemed to be emphasizing that even though Crawford may not have been a good person, he still did not deserve to be put in danger by defendant's actions.

asked during trial: "In order to warrant reversal, it is necessary to show some prejudice or pattern of eliciting inadmissible testimony." *People v Watson*, 245 Mich App 572, 587; 629 NW2d 411 (2001) (internal quotation marks and citation omitted). Defendant shows no such pattern of abuse by the prosecutor, and the exchange that he highlights is fairly innocuous.

Moreover, and significantly, the court's ruling did not deny defense counsel the opportunity to argue that Converse's testimony at trial was inconsistent with his prior testimony at the preliminary examination, and the court offered defense counsel the opportunity to cross-examine Converse again following redirect, but he declined. Therefore, defendant's argument that he was denied his due process right to confront or impeach the witness based on the court's ruling is not supported by the record, and defendant is not entitled to relief based on this issue.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Joel P. Hoekstra
/s/ Patrick M. Meter