*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
September 08, 2025
10:48 AM

Plaintiff-Appellee,

v

Nos. 368402; 368403
Berrien Circuit Court
LC Nos. 2022-001243-FH; 2022-
001244-FC

DANIEL LEE SPARKS,

Defendant-Appellant.

Before: SWARTZLE, P.J., and GARRETT and YATES, JJ.

PER CURIAM.

Defendant, Daniel Lee Sparks, shot Sherrea Butler and Lawrence Pryor, then ran from the police. For those actions, defendant was convicted by jury verdict of assault with intent to murder Butler, MCL 750.83; assault with intent to do great bodily harm to Pryor, MCL 750.84; two counts of possessing a gun during the commission of a felony (felony-firearm), MCL 750.227b; carrying a concealed pistol, MCL 750.227; and resisting arrest, MCL 750.81d(1). Defendant thereafter was sentenced to serve 30 to 60 years' imprisonment for assault with intent to murder and shorter terms of imprisonment for the other counts of conviction. On appeal of right, defendant asserts that the prosecutor impermissibly attempted to shift the burden of proof in rebuttal argument, and that the sentences imposed by the trial court, although within the applicable sentencing guidelines ranges, were unacceptably disproportionate. We affirm.

## I. FACTUAL BACKGROUND

In April 2022, Coreena Henry hired Butler to get groceries for defendant and Henry. Butler often gave rides to Henry in exchange for payment. Henry gave Butler defendant's food-assistance card to buy the groceries, but Butler was unable to use that card because the personal identification number (PIN) that Henry gave her did not work, so Butler used her niece's food-assistance card. When Butler delivered the groceries, she still had defendant's card.

In the early morning hours of May 1, 2022, Henry hired Butler to pick up defendant from Henry's apartment. Butler, along with her acquaintance, Lawrence Pryor, arrived at the apartment to pick up defendant and waited for defendant to come out. "[I]t was taking everybody too long," so Butler went to the front door and left the vehicle running. Defendant and Henry were having a

-1-

discussion at the front door. Pryor also left the vehicle and stood off to the side of the apartment building while he waited. Henry said "eff him," and then invited Butler and Pryor to come inside.

Butler went to turn off her vehicle. As she did so, she turned back and inquired about how she would get paid for the $100 that she spent on her niece's card because defendant's PIN did not work. Butler explained that, when she turned, she saw defendant pointing a gun at her. Defendant shot Butler in the chest and shot Pryor in the back. He then asked Butler where his card was. She told him that it was in her purse in the car, so defendant retrieved his card.

Henry called 911, and nearby police officers promptly drove to the scene. Another woman, Alissa Crayton, was at the apartment, and so the officers who arrived took statements from Crayton and Henry. Crayton promptly stopped speaking with them out of agitation and concern about what had happened. At that point, an unidentified man in a blue vehicle arrived and picked up Crayton, who left the scene in the blue vehicle.

Meanwhile, a police officer located defendant, who matched the description of the suspect because of his appearance and the fact that he was carrying a backpack. The officer told defendant to stop, but he ran. The police lost track of defendant for approximately 20 minutes before finding him again within one mile of the scene. Officers repeatedly ordered defendant to stop and get on the ground, but defendant first lit a cigarette and removed his jacket before complying.

While defendant was in handcuffs, he spontaneously exclaimed that he was not the shooter. During a subsequent custodial interview, defendant mentioned having knowledge of the incident, feeling targeted by deceptive women, and having residue on his hands from his friend's firearm. Defendant denied hurting anyone or having a gun, but his backpack was full of live ammunition.

Henry and Pryor were subpoenaed for trial, but law-enforcement officers could not secure them to testify. Instead, the recording of Henry's 911 call was played, and Pryor's testimony from defendant's preliminary examination was read to the jury. In closing arguments, the prosecution explained that there was a lack of evidence because those witnesses were unavailable, the gun was never recovered, and the bullets that hit Butler and Pryor could not be removed from their bodies. Defense counsel responded by challenging the sufficiency of the investigation, arguing as follows:

> And the blue car guy, who is he? We don't even have his name, and why did they let [Crayton] leave with him? Where did they go? Why aren't they here in court? . . . We can't rule out that either of them could have even been the shooter, but we know they're friends, the three ladies that all didn't come to court, except for [Butler].

* * *

> I guess to kind of wrap things up, we certainly didn't hear all the facts that led up to this incident. We didn't hear from the people who were there or were immediately involved who left the scene.

* * *

Given the lack of evidence, given the failure of law enforcement to complete a thorough investigation, given the shortcomings of the testimony under oath to support the allegations, and given the overall dubious nature of the circumstances, there are significant doubts about what happened.

On rebuttal, the prosecution addressed that argument with the following comments:

There was a lot of talk about Alissa Crayton, yeah, she was at the scene. [A] [s]ergeant . . . said she didn't want to cooperate, gave a brief statement and then left. The police report, Alissa Crayton's contact information is right here, the same police report defense counsel has. If Alissa Crayton['s] information is so important to [defendant], why didn't they subpoena her to get her here to come to court? It must not be that important, right?

The driver of the minivan, Andre Smith, his information is right here. Address, phone numbers, contact information, again, why didn't they call Andre Smith? It must not be that important. Red herrings. Now, Henry and Pryor I agree are very important. I told you why Henry is not here. I told you why Pryor is not here. You heard a little bit from Pryor, a little bit from Henry on the 911 call.

The prosecution also noted that defendant had the opportunity to furnish more information about the alleged other shooter during the custodial interrogation that occurred after defendant consented to speak, but defendant chose not to offer any such information.

After the jury convicted defendant, he moved for a new trial, arguing that the prosecution's comments during the rebuttal argument constituted misconduct because they shifted the burden to defendant to provide evidence and prove his innocence. At a hearing on the motion, the trial court did not determine whether those comments shifted the burden of proof. The trial court found that, regardless of whether those comments shifted the burden, they did not prejudice defendant in light of the overwhelming evidence against him and the curative instructions given to the jury. Because defendant did not object at trial, his argument was not preserved, so the trial court found under the plain-error rule that defendant failed to establish any harm to his substantial rights. The trial court subsequently sentenced defendant, as a fourth-offense habitual offender, MCL 769.12, to terms of imprisonment that fell within the applicable sentencing guidelines ranges. This appeal follows.

## II. LEGAL ANALYSIS

On appeal, defendant contends that prosecutorial error during the rebuttal argument entitles him to a new trial. But if that argument fails, defendant asserts that he is entitled to be resentenced to prison terms that are not disproportionate to the offenses and the offender. We shall address his two arguments in turn.

## A. PROSECUTOR'S STATEMENTS IN REBUTTAL

Defendant insists that the prosecutor made comments during rebuttal argument that had the effect of shifting the burden of proof from the prosecution to the defense. A prosecutor "may not

comment on the defendant's failure to present evidence because it is an attempt to shift the burden of proof." *People v Fyda*, 288 Mich App 446, 464; 793 NW2d 712 (2010). But in order to preserve a claim of prosecutorial error, " 'a defendant must contemporaneously object and request a curative instruction.' " *People v Isrow*, 339 Mich App 522, 529; 984 NW2d 528 (2021), quoting *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). "Defendant did not take either of these steps[,]" so the issue of prosecutorial error is "unpreserved and is reviewed for plain error." *Isrow*, 339 Mich App at 529. "The plain-error test has four elements: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) . . . the plain error affected substantial rights," and 4), "once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse." *People v Allen*, 507 Mich 597, 613-614; 968 NW2d 532 (2021) (quotation marks and citation omitted). "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of the judicial proceedings[.]" *Id*. at 614.

Defendant characterizes two arguments made in the prosecutor's rebuttal as impermissible burden-shifting. First, defendant faults the prosecution for commenting on his responses—or the lack of responses—when he gave a voluntary statement to the police. According to defendant, the prosecution suggested that defendant should have given the police a complete statement, and "[h]e could have given one, and he chose not to." In *People v Savage*, 327 Mich App 604, 615-616; 935 NW2d 69 (2019), this Court ruled that a prosecutor's remarks "about what defendant might have said, but didn't say," when he responded to a police officer's questions did not impermissibly shift the burden of proof. Similarly, in this case, the prosecutor's remarks in rebuttal about defendant's refusal to give the police a complete statement did not improperly shift the burden of proof, so we find no prosecutorial error, plain or otherwise, in those comments.

Second, defendant refers to the prosecutor's statements in rebuttal that if defendant thought a missing witness, Crayton, was "so important [to defendant], why didn't they subpoena her to get her to come to court? It must not be that important, right?" Similarly, the prosecutor referred to "[t]he driver of the minivan" and asked the jurors: "why didn't they call [him]? It must not be that important." Those comments plainly constituted improper burden-shifting. See *Fyda*, 288 Mich App at 464 ("a prosecutor may not comment on the defendant's failure to present evidence because it is an attempt to shift the burden of proof"). Consequently, we must determine whether that plain error affected defendant's substantial rights and then consider whether to exercise our discretion and grant defendant a new trial. *Allen*, 507 Mich at 613.

In deciding whether the plain error in the rebuttal argument affected defendant's substantial rights, we begin by observing that the prosecution presented strong evidence of defendant's guilt. As the trial court explained, a victim identified defendant as the shooter, defendant was found with ammunition near the scene of the shooting, defendant made statements that he was not the shooter before he was informed of the shooting, and defendant made comments during a police interview establishing his connection to the incident. Moreover, the prosecutor's impermissible comments in rebuttal were intended to respond to defendant's closing argument, which criticized the police and the prosecution for failing to conduct a thorough investigation. The lack of a contemporaneous objection did not enable the trial court to immediately give a cautionary instruction to the jury, but the trial court stated in its final instructions that "[d]efendant is not required to prove his innocence or do anything" and "[t]he lawyers' statements and arguments are not evidence." The instructions, which the jurors presumably followed, cured the prosecutorial error that occurred during rebuttal.

*People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011) ("Jurors are presumed to follow their instructions, and it is presumed that instructions cure most errors."). Thus, we conclude that the plain error committed during the rebuttal argument did not affect defendant's substantial rights.

Assuming, for the sake of argument, that the plain error did affect defendant's substantial rights, we still find that reversal of defendant's convictions is not warranted. See *Allen*, 507 Mich at 613-614. Our Supreme Court has consistently stated that "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 614 (quotation marks and citations omitted). Here, defendant made comments and engaged in actions after the shooting that indicated he was guilty of shooting the victims, and the prosecutorial error in rebuttal did not seriously affect the fairness, integrity, or public reputation of trial proceedings that were otherwise fair and proper. Therefore, in exercising our discretion on appeal, we find no basis for ordering a new trial.

## B.  PROPORTIONALITY OF SENTENCES

Defendant contests his sentences as impermissibly disproportionate to the offenses and the offender, but he acknowledges that all of his sentences fell within the applicable guidelines ranges. According to *People v Posey*, 512 Mich 317, 326; 1 NW3d 101 (2023), we review sentences within the minimum guidelines range for reasonableness under *People v Steanhouse*, 500 Mich 453; 902 NW2d 327 (2017). The standard of review for assessing "a sentence for reasonableness on appeal is abuse of discretion." *Steanhouse*, 500 Mich at 471. The sentence must be "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Id*. at 459-460. The Michigan sentencing guidelines are merely advisory, but the trial court is required to consider the guidelines when sentencing a defendant. *People v Teike*, 348 Mich App 520, 538; 19 NW3d 733 (2023). A sentence within the guidelines range is presumptively reasonable, but the presumption is rebuttable. *Posey*, 512 Mich at 360. Defendant bears the burden to overcome the presumption of reasonableness. *Id*. at 357. "[T]o overcome the presumption that the sentence is proportionate, a defendant must present unusual circumstances that would render the presumptively proportionate sentence disproportionate." *People v Bowling*, 299 Mich App 552, 558; 830 NW2d 800 (2013).

Defendant was a fourth-offense habitual offender, so his sentencing guidelines ranges were elevated to take into account his lengthy criminal record. Defendant's sentencing guidelines range for assault with intent to murder was 171 to 570 months, and he received a minimum prison term of 360 months. His guidelines range for assault with intent to do great bodily harm was 34 to 134 months, and he received a minimum prison term of 120 months. His guidelines range for carrying a concealed weapon was 19 to 76 months, and he received a minimum prison term of 72 months. His guidelines range for resisting a police officer was 2 to 34 months, and he received a minimum prison term of 18 months. All those prison terms were ordered to be served concurrently. Finally, defendant received a 24-month prison term for each felony-firearm charge, with those prison terms running concurrent with each other, but consecutive to the other prison sentences.

Even though the trial court did not impose any minimum term of imprisonment at the upper end of the applicable guidelines range, defendant asserts that his sentences were disproportionate. To support that assertion, defendant cites as mitigating factors his lack of a violent criminal history, his difficult personal background, and his capacity for rehabilitation. None of those circumstances

in defendant's case rises to the level of something "unusual" that would rebut the presumption that defendant's within-guidelines sentences were reasonable and proportionate to the offenses and the offender. See *Bowling*, 299 Mich App at 558. A substantial criminal record—whether violent or nonviolent—that reflects a "disregard for others" justifies a longer term of imprisonment. See *id*. at 559. Although defendant's prior criminal history was not as violent as his most recent offenses, his record still includes a pattern of disregarding other people through theft and domestic violence. See *id*. With respect to defendant's difficult personal background, nothing in his history provides any explanation or justification for shooting defenseless victims. And with regard to defendant's capacity for rehabilitation, he was 41 years old, so he was not entitled to the benefit of being either young and immature or old and likely not to live much longer. Like the 49-year-old defendant in *Bowling*, 299 Mich App at 558-559, defendant has not identified anything about his potential for rehabilitation that is sufficiently "unusual" to rebut the presumptive proportionality of his prison terms, "especially considering his lengthy criminal record and the gravity of his offenses." Hence, we find no abuse of discretion in the trial court's sentencing decisions.

Affirmed.

/s/ Brock A. Swartzle
/s/ Kristina Robinson Garrett
/s/ Christopher P. Yates