*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MITCHEL TAYLOR HIGBEE,

        Defendant-Appellant.

UNPUBLISHED
January 26, 2023

No. 357996
Barry Circuit Court
LC No. 2020-000604-FH

Before: RIORDAN, P.J., and MARKEY and REDFORD, JJ.

PER CURIAM.

Defendant, Mitchel Taylor Higbee, appeals as of right his jury trial convictions of production of child sexually abusive material, MCL 750.145c(2); and using a computer to commit a crime, MCL 752.797(3)(f). The trial court sentenced defendant as a second-offense habitual offender, MCL 769.10, to concurrent prison terms of 62 to 360 months for both offenses.

On appeal, appellate counsel raises several arguments on behalf of defendant: (1) the unreasonable delay in defendant's arrest violated his right to a fair trial because an eye witness no longer remembered the day on which the incident was alleged to have occurred; (2) defense counsel provided ineffective assistance for failing to move to dismiss the charges as a result of the delay; (3) the trial court erred by allowing the admission of evidence related to his previous conviction of sexual misconduct against a minor; (4) the prosecutor committed error by questioning witnesses about the specifics of defendant's prior offense and reiterating those details during closing argument; (5) defense counsel was ineffective for failing to remove a juror with potential bias; and (6) his within-guideline sentence is unreasonable and disproportionate. Finally, in a Standard 4 Brief,[1] defendant claims that the trial court erred by imposing a higher sentence because he refused to admit guilt at sentencing. However, for the reasons explained in this opinion, we conclude that these claims are without merit and affirm defendant's convictions and sentence.

---

[1] Defendant's Standard 4 Brief was filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4.

# I. FACTUAL AND PROCEDURAL HISTORY

This case arises out of defendant's written request to 12-year-old HZ to take his cellular phone into the bathroom and take a naked picture of herself during Christmas breakfast at the church they both attended. HZ reported the request to her mother, who informed the church's youth pastor and his wife of the incident. The pastor's wife contacted law enforcement. Defendant was eventually arrested and charged. Following a two-day trial, the jury convicted defendant of both charges, and he was sentenced to 62 to 360 months' imprisonment. Defendant then filed this appeal.

# II. ANALYSIS

## A. PREARREST DELAY

Defendant first asserts that he was denied his right to due process and his right to present a defense on the basis of prearrest delay. We disagree.

Whether defendant was denied his constitutional right to present a defense is reviewed by this Court de novo. *People v Unger (On Remand)*, 278 Mich App 210, 247; 749 NW2d 272 (2008). However, because defendant failed to preserve this claim in the trial court, it will be reviewed for plain error affecting substantial rights. *People v Pipes*, 475 Mich 267, 274; 715 NW2d 290 (2006). Plain error requires that: "1) [an] error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*.

In regard to prearrest delay, this Court explained the following:

Mere delay between the time of the commission of an offense and arrest is not a denial of due process. There is no constitutional right to be arrested. Rather, the guideline is whether the record presents evidence of prejudice resulting from the delay which violates a defendant's right to procedural due process. [*People v Patton*, 285 Mich App 229, 236; 775 NW2d 610 (2009) (quotation marks and citation omitted).]

"Before dismissal may be granted because of prearrest delay there must be actual and substantial prejudice to the defendant's right to a fair trial and an intent by the prosecution to gain a tactical advantage." *Id*. at 237 (quotation marks and citation omitted). "Substantial prejudice is that which meaningfully impairs the defendant's ability to defend against the charge in such a manner that the outcome of the proceedings was likely affected." *Id*. However, "[a]ctual and substantial prejudice requires more than generalized allegations." *Id*. (quotation marks and citation omitted). "If a defendant demonstrates prejudice, the prosecution must then persuade the court that the reason for the delay sufficiently justified whatever prejudice resulted." *Id*.

On appeal, defendant argues that because there was a delay in his arrest, a witness no longer remembered sitting with defendant at the church Christmas breakfast. In support of his claim, defendant provided an unsigned and unnotarized affidavit, which states his belief "that had there not been delay in his arrest, [the witness] would have remembered the Christmas breakfast and

that he sat with me the entire time and did not observe any notes or phones being passed between me and [HZ]."

The trial court briefly addressed the timing of defendant's arrest. It is undisputed that the incident was alleged to have occurred on December 22, 2019, at an annual Christmas breakfast held by the church. The incident was reported two weeks later, after HZ's mother had a meeting with the youth pastor and his wife. Deputy Morganne Hubbell with the Barry County Sheriff's Office testified that she spoke with HZ's family on January 4, 2020. According to Deputy Hubbell, she called defendant's mother-in-law and left a voicemail, but she never returned the call. The mother-in-law denied ever receiving a phone call from law enforcement in January 2020. She testified that she was not contacted until March 2021.

Detective Kimbel testified that he contacted the HZ's family and scheduled a forensic interview for her through Safe Harbor. He observed that interview. He then conducted a background check on defendant and discovered defendant's previous conviction. Detective Kimbel wanted to speak with defendant, but he was not sure where defendant was living. HZ's family reported that defendant was living with his mother-in-law and father-in-law. However, that was not the case. Detective Kimbel stated that in March 2020, the department suspended all interviews unless they were absolutely necessary as a result of the COVID-19 pandemic. This case was not deemed an emergency because HZ was safe at home and it did not appear that defendant attempted to make any further contact. Detective Kimbel eventually found defendant and interviewed him in August 2020. During defendant's interview, he stated that he attended breakfast with the witness, but the witness's wife was not present. Detective Kimbel stated that he interviewed the witness in September 2020.

Given the evidence in the record, defendant has not shown "actual and substantial" prejudice. See *id*. Defendant's only support for his claim of prejudice is an undated and unnotarized affidavit that he produced for this appeal. There was a seven-month delay between when the incident was reported to police in January 2020, and when defendant was arrested and interviewed by police in August 2020. However, defendant was aware of the allegations on the evening of December 22, 2019, as a result of the conversation with wife and mother-in-law. Moreover, the testimony provided at trial is unclear concerning the witnesses' presence at the breakfast. HZ testified that he was only at the breakfast for a few minutes. She stated that only her younger sister and another unidentified young girl remained at the table when defendant gave her the note and his phone. HZ's mother testified that she observed defendant and HZ sitting alone at the table at some point. Defendant's mother-in-law testified that the witness, his wife, and three children were at the table when she left. But, this contradicts defendant's statement during his interview in which he stated that the wife was not present. Defendant's father-in-law testified that he saw defendant sitting alone with young girls from other families when he entered the breakfast room. He could not remember who was at the table when he left. As previously stated, the prejudice suffered by defendant must be "actual and substantial," rather than "generalized allegations." See *id*.

More importantly, defendant fails to assert that the prearrest delay was the result of the prosecution intending to gain a tactical advantage. See *id*. From Detective Kimbel's testimony, it appears that the delay was the result of the COVID-19 pandemic lockdowns and the lack of knowledge concerning defendant's residence. Defendant does not dispute these explanations.

-3-

Further, he does not explain why he was unable to remain in contact with the witness concerning his possible testimony and memory. Accordingly, defendant has not established actual and substantial prejudice, and he was not denied due process as the result of any prearrest delay. See *id.* See also *United States v Lovasco*, 431 US 783, 796; 97 S Ct 2044; 52 L Ed 2d 752 (1977) (holding "that to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time").

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Relatedly, defendant contends that his counsel was ineffective for failing to move to dismiss the charges on the basis of prearrest delay. We disagree.

"In order to preserve the issue of effective assistance of counsel," defendant "should make a motion in the trial court for a new trial or for an evidentiary hearing." *People v Sabin (On Second Remand)*, 242 Mich App 656, 658; 620 NW2d 19 (2000). In this case, defendant failed to move for a new trial or an evidentiary hearing in the trial court. However, if a defendant does not timely move the trial court for a new trial or evidentiary hearing, he may move in this Court to remand to properly preserve the issue for appellate review. See *People v Ginther*, 390 Mich 436, 444-445; 212 NW2d 922 (1973). Defendant moved to remand in this Court, contending that defense counsel was ineffective for failing move to dismiss for delay in defendant's arrest. Therefore, this issue is preserved.

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "The trial court's factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). However, because this Court denied defendant's motion for remand,[2] this Court's review of his ineffective assistance of counsel claim is limited to errors apparent on the record. See *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

To prevail on a claim of ineffective assistance of counsel, a defendant must establish that "(1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different." *Sabin (On Second Remand)*, 242 Mich App at 659.

As discussed, defendant has not established a reasonable probability that he would have been entitled to dismissal of the charges on the basis of prearrest delay. "Ineffective assistance of counsel cannot be predicated on the failure to make a frivolous or meritless motion." *People v Riley*, 468 Mich 135, 142; 659 NW2d 611 (2003). First, it is unclear whether the witness was present at the time the events in question occurred. It also is unclear whether the witness could have provided testimony that was helpful to defendant if defendant was arrested earlier. Second,

---

[2] *People v Higbee*, unpublished order of the Court of Appeals, entered March 2, 2022 (Docket No. 357996).

defendant does not contend that the prearrest delay was the result of the prosecution intending to gain a tactical advantage. See *Patton*, 285 Mich at 237.

Thus, in light of the current record, defendant has not shown that defense counsel's performance in this regard fell below an objective level of reasonableness or that any alleged error affected the outcome of the lower court proceedings. See *Sabin (On Second Remand)*, 242 Mich App at 659. Further, given his arguments on appeal, a remand to the trial court for an evidentiary hearing would not significantly assist defendant in this regard. Therefore, defendant has failed to establish that he was denied the effective assistance of counsel. See *id*.

## C. PRIOR CONVICTION

Next, defendant asserts that the trial court erred by allowing evidence concerning his previous conviction to be admitted at trial. We disagree.

"We review a trial court's evidentiary decisions for an abuse of discretion." *People v Danto*, 294 Mich App 596, 598-599; 822 NW2d 600 (2011). "A trial court abuses its discretion when its decision falls outside the range of principled outcomes." *Id*. at 599. "A decision on a close evidentiary question ordinarily cannot be an abuse of discretion." *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019). "Preliminary questions of law, such as whether a rule of evidence or statute precludes the admission of particular evidence, are reviewed de novo, and it is an abuse of discretion to admit evidence that is inadmissible as a matter of law." *People v Bynum*, 496 Mich 610, 623; 852 NW2d 570 (2014).

In this case, the trial court allowed evidence concerning defendant's prior conviction pursuant to MCL 768.27a. MCL 768.27a provides an exception to the general prohibition against propensity evidence. For instance, MRE 404(b) allows evidence of other crimes for nonpropensity purposes, such as to show "motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident . . . ." On the other hand, in pertinent part, MCL 768.27a(1) provides that "in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." Evidence is relevant if it tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. In other words, "[b]ecause a defendant's propensity to commit a crime makes it more probable that he committed the charged offense, MCL 768.27a permits the admission of evidence that MRE 404(b) precludes." *People v Watkins*, 491 Mich 450, 470; 818 NW2d 296 (2012). However, "evidence admissible pursuant to MCL 768.27a may nonetheless be excluded under MRE 403 if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Id*. at 481 (quotation marks and citation omitted).

First, there is no dispute that production of child sexually abusive material is a listed offense against a minor. See MCL 768.27a(2); MCL 28.722(r)(*i*). Second, the evidence relating to defendant's previous conviction of using a computer to commit a crime was relevant to defendant's propensity to solicit sexually explicit photos from underaged girls whom he met at church. As a

result, this evidence assisted the jury in assessing HZ's credibility. That was especially important in this case because there was no corroborating evidence. HZ testified that defendant retrieved the note and phone from her at the church, and law enforcement was unable to complete an extraction on defendant's phone. Essentially, the evidence relating to defendant's previous conviction was relevant because evidence that defendant sought sexually explicit photos of a 10-year-old girl tended to make HZ's otherwise uncorroborated testimony more likely.

Moreover, evidence concerning defendant's previous conviction was not overly prejudicial. "[W]hen applying MRE 403 to evidence admissible under MCL 768.27a, courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect." *Watkins*, 491 Mich at 487. "That is, other-acts evidence admissible under MCL 768.27a may not be excluded under MRE 403 as overly prejudicial merely because it allows a jury to draw a propensity inference." *Id*. Our Supreme Court provided the following factors to consider whether other-acts evidence admissible under MCL 768.27a should be excluded under MRE 403:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Watkins*, 491 Mich at 487-488 (citation omitted).]

"This list of considerations is meant to be illustrative rather than exhaustive." *Id*. at 488.

Here, defendant's previous conviction and the instant charged conduct were similar. Defendant's prior victim was 10 years old, while HZ was 12 years old. Defendant asked both victims to provide him with sexually explicit photos on a cell phone. He met both victims at church. There are differences between the two cases: in the prior case, defendant admitted to the conduct, he conversed with the victim using his phone, and he sent her a sexually explicit photo of himself. In this case, defendant handed his phone to HZ with the request that she take photos with it in the bathroom. In any event, there was evidence that defendant attempted to give a cell phone to HZ and that he provided her with his personal e-mail address and phone number. He also gave her notes, hugged her, and touched her knee at church. Further, the previous incident occurred in 2014, five years before this incident, and defendant pled guilty and was sentenced to five years of probation. Five months after his probation ended defendant was involved in the incident which now is before us on appeal. Finally, as previously discussed, there were no eyewitnesses or physical evidence relating to the instant matter. The MCL 768.27a evidence rebutted the defense's attack on HZ's credibility. Defendant asserted that HZ was infatuated with him and wanted to get back at him for getting married and distancing himself from her. Accordingly, the MCL 768.27a evidence was highly probative of defendant's intent and propensity to obtain sexually explicit photos from underaged girls and was not substantially outweighed by the danger of unfair prejudice.

Finally, the trial court provided the jury with the following instruction:

> The Prosecution has introduced evidence of claimed acts of sexual misconduct by the Defendant with a [KW] for which he is not on trial.

Before you may consider such alleged acts as evidence against the Defendant, you must first find that the Defendant actually committed those acts.

If you find the Defendant did commit those acts, you may consider them in deciding if the Defendant committed the offenses for which he is now on trial.

You must not convict the Defendant here solely because you think he's guilty of other bad conduct. The evidence must convince you beyond a reasonable doubt that the Defendant committed the alleged crime—this alleged crime, or you must find him not guilty.

With this instruction, the trial court cautioned the jury about the proper use of the evidence, which limited the potential for unfair prejudice. "Jurors are presumed to follow their instructions, and it is presumed that instructions cure most errors." *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011).

Because the probative value of evidence concerning defendant's prior conviction was not substantially outweighed by the danger of unfair prejudice, the trial court did not abuse its discretion by allowing its admission at trial.

## D. PROSECUTORIAL ERROR

Similarly, defendant argues that the prosecutor asked improper questions and made improper statements during closing argument relating to his prior conviction. We disagree.

"In cases alleging prosecutorial [error], issues are preserved by contemporaneous objections and requests for curative instructions . . . ." *People v Evans*, 335 Mich App 76, 88; 966 NW2d 402 (2020) (quotation marks and citation omitted; ellipsis in original). Although defense counsel objected to the cross-examination of defense witnesses in regard to specific details relating to defendant's previous conviction, it does not appear that those objections were made on the basis of prosecutorial error. "[A]n objection on one ground is insufficient to preserve an appellate argument based on a different ground . . . ." *Id.* (quotation marks and citation omitted). Moreover, defendant did not object to any statements the prosecutor made during closing argument. Therefore, defendant's claim of prosecutorial error is unpreserved.

This Court generally reviews claims of prosecutorial error de novo. *People v Fyda*, 288 Mich App 446, 460; 793 NW2d 712 (2010). However, because defendant's prosecutorial error claim is unpreserved, this Court's review is for plain error affecting substantial rights. *Id.* at 460-461.

A prosecutor has a unique role in a criminal trial. "The prosecutor's job isn't just to win, but to win fairly, staying well within the rules." *Evans*, 335 Mich App at 89 (quotation marks and citation omitted). The "rules" also pertain to cross-examination. *Id.* "Cross-examination is a critical method of testing a witness's credibility and exposing weakness in a witness's account. And it is appropriate that cross-examiners be afforded wide latitude to do their job." *Id.* at 90. Indeed,

[o]ne of the elementary principles of cross-examination is that the party having the right to cross-examine has a right to draw out from the witness and lay before the jury anything tending or which may tend to contradict, weaken, modify or explain the testimony of the witness on direct examination or which tends or may tend to elucidate the testimony or affect the credibility of the witness. [*Id*. (quotation marks and citation omitted)].

In this case, during the cross-examination of defense witnesses, the prosecutor elicited testimony showing that although these witnesses were aware of defendant's previous conviction, he had withheld specific details from that conviction. While questioning defendant's mother-in-law, the prosecutor asked whether she was aware that the prior victim was 10 years old, that defendant knew she was 10 years old when he asked her to send him naked pictures, that defendant asked her about a vibrator, that defendant and the victim pretended be engaged, and that defendant told the victim he loved her. Defendant's mother-in-law stated that she was not aware of those details. The prosecutor asked defendant's wife similar questions and received the same response. Defendant's father-in-law testified on cross-examination that he knew that defendant had a previous conviction that arose from defendant texting someone whom he thought was an older girl, but he later learned that the girl was actually younger. Defendant did not provide any further details and his father-in-law accepted defendant's incomplete explanation.

It was not improper for the prosecutor to cross-examine defense witnesses concerning the details of defendant's prior conviction. First, the details that the prosecutor asked about were already testified about by retired Grand Rapids Police Department detective Kristine Beenen. As was previously discussed, this information was properly admitted pursuant to MCL 768.27a. The prosecutor did not elicit any new or inadmissible information from the defense witnesses. Second, the prosecutor asked about this information to impeach their testimony on direct that they were aware of defendant's conviction and were not concerned. It appears that the prosecutor's questions were meant to show that the witnesses' impressions of defendant were not entirely accurate, which reduced their credibility. Further, the lack of information may have affected their perception of defendant's actions. For instance, defendant provided his personal phone number, e-mail address, and a phone to HZ before the incident. Defendant's mother-in-law and father-in-law both testified that it was somewhat concerning that defendant was attempting to have personal contact with a 12-year-old girl. Possibly, the reactions would have been different if the witnesses were fully aware of the details and circumstances of defendant's prior conviction. In any event, the questioning showed that the defense witnesses were misinformed about the prior conviction, and it was not improper or overly prejudicial. See *id*.

Defendant also asserts that the prosecutor's statements concerning his previous conviction during closing argument were improper. This assertion is without merit. During closing argument, the prosecutor contended that HZ did not have any motive to lie. On the other hand, the prosecutor stated that defendant did have a motivation to lie and had previously lied. The prosecutor provided the following statement:

The liar, the one with the motive to lie is [defendant]. He lied to [HZ's father]. Told [HZ's father] that he thought he was texting with an eighteen-year-old, turned out to be a fourteen-year-old. That's a lie. He knew it was at [sic] ten-year-old girl that he was sending naked pictures with, receiving naked pictures from. He lied to

[HZ's father] about it, he lied to his mother-in-law about it, he lied to his father-in-law about it, he lied to his wife about it. He hid it all from everybody. Like he's leading a double life, wanting them to believe one thing about him, lying to 'em about his past.

"A prosecutor is afforded great latitude regarding his or her arguments and conduct at trial." *Fyda*, 288 Mich App at 461. In this case, the defense theory was that HZ was lying and that she was attempting to get back at defendant because he married someone else. The prosecutor countered this theory by arguing that HZ had no reason to lie, while defendant did have a reason to lie and had lied about his conduct in the past. "When a defendant advances a theory, the prosecutor may argue the inferences flowing from that theory." *Id*. at 462. Although the prosecutor said that defendant lied, this rhetoric did not amount to an improper use of character evidence. See *id*.

Moreover, the trial court instructed the jury that the lawyers' statements were not evidence:

The lawyers' statement ar—and arguments are not evidence. They're only meant to help you understand the evidence and each side's legal theories. You should only accept things lawyers say that are supported by the evidence or by your own common sense and general knowledge. The lawyers' questions to the witnesses, your questions to the witnesses, and any questions that I asked are not evidence. You should consider these questions only as they give meaning to the witnesses' answers.

This Court presumes that the jury followed these instructions. *Id*. at 465. Accordingly, defendant has not demonstrated that the prosecutor's questions or comments concerning his prior conviction amounted to plain error affecting his substantial rights. See *id*. at 462.

Finally, defendant asserts that he was denied the effective assistance of counsel because defense counsel failed to object to the prosecutor's questions and statements.

However, defense counsel *did* object to the cross-examination of defendant's mother-in-law and wife about specific details concerning defendant's previous conviction, and the trial court overruled those objections. As a result, defense counsel was not deficient on the basis that his objections were unsuccessful. "A particular strategy does not constitute ineffective assistance of counsel simply because it does not work." *Matuszak*, 263 Mich App at 61.

Further, although defense counsel did not object to the prosecutor's statements during closing arguments, as previously addressed, those statements were not improper and an objection would have been meritless. See *Riley*, 468 Mich at 142. The trial court also instructed the jury that the lawyers' statements and arguments were not evidence. See *Fyda*, 288 Mich App at 465. Therefore, defendant has not shown that defense counsel was ineffective for failing to object or a reasonable probability that this failure affected the outcome of the proceedings. *Sabin (On Second Remand)*, 242 Mich App at 659. Accordingly, defendant's claim that he was denied the effective assistance of counsel must fail. See *id*.

## E. IMPARTIAL JURY

Defendant further argues that he was denied the effective assistance of counsel because defense counsel failed to remove a juror with potential bias. We disagree.

A criminal defendant has the right to be tried by an impartial jury. *People v Haynes*, 338 Mich App 392, 411; 980 NW2d 66 (2021). "A trial court ensures that a jury is impartial by conducting voir dire and removing biased jurors before impaneling the jury: The purpose of voir dire is to elicit enough information for development of a rational basis for excluding those who are not impartial from the jury." *Id.* (quotation marks and citation omitted). "To the extent that defendant maintains that the process did not result in an impartial jury, defendant has the burden to show that a particular juror was not impartial or, at the very least, that the juror's impartiality was in reasonable doubt." *Id.*

In this case, defendant's assertion that defense counsel failed to ask Juror JB further questions concerning his possible bias is not supported by the record. Defendant's concern with JB arises from his answer to the trial court's question whether any of the potential jurors had a close family member who was involved in or a victim of sexual assault. JB responded that there was a situation in which his stepson molested his stepdaughter approximately four or five years before the trial. JB specified that the case went through the legal system. When the trial court asked whether the case affected his ability to be a fair and impartial juror, JB answered, "I don't think so, no." He distinguished the two cases by mentioning that his step children were younger; he believed that they were aged 9 years and 12 years when the offense occurred.

Moreover, both the trial court and the attorneys asked JB other questions. Initially, JB admitted that he had a previous conviction of driving while intoxicated that occurred about eight years before. JB stated that he pleaded guilty to the offense and that it was the best thing to ever happen to him. He stated that he would be a good, fair, and impartial juror in the case. Upon further questioning by defense counsel, JB explained that he was in a bad accident, which caused him to stop drinking. JB also stated his belief that people could change. He explained that he was an alcoholic, but he had not had a drink in almost nine years. He stated that he would not have pleaded guilty to the driving while intoxicated charge if he was not actually guilty.

During questioning concerning the honesty of children, JB acknowledged that children were capable of lying, stating that he could tell when his children were being dishonest. He also acknowledged that children were capable of exaggerating and gave the example of his son doing so while fishing.

Defense counsel then asked each juror whether he or she could maintain an open mind and not rush to judgment, and wait for all the evidence to be presented. Defense counsel expressed his fear that the jurors would convict defendant on the basis of his prior conviction. JB stated that he could keep an open mind.

Defense counsel attempted to excuse one juror for cause because he stated his belief that defendant should testify. However, the trial court further questioned the juror, and the juror stated that he would listen to the evidence and could still find defendant not guilty even if he did not testify. The trial court denied counsel's attempt to remove this juror for cause. However, the trial

court did remove two other possible jurors for cause on the basis of their acknowledgment that they would struggle to be impartial to testimony provided by law enforcement.

Defense counsel thoroughly questioned the potential jurors and excused several individuals using preemptory strikes. The remaining jury members stated that they would be fair and impartial. Given the entire process of voir dire, defendant fails to demonstrate that JB lacked impartiality or that his impartiality was in reasonable doubt. *Id*. Accordingly, defendant has not shown that his counsel was deficient or a reasonable probability that the failure to excuse this juror affected the outcome of the proceedings. See *Sabin (On Second Remand)*, 242 Mich App at 659. Defendant's claim is without merit.

F. PROPORTIONATE SENTENCE

Defendant also argues that his within-guideline sentence is disproportionate. We disagree.

When this Court reviews a sentence for reasonableness, the proper inquiry is "whether the trial court abused its discretion by violating the 'principle of proportionality' . . . , which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and offender." *People v Posey*, 334 Mich App 338, 354-355; 946 NW2d 862 (2020) (quotation marks and citations omitted).

In *People v Lockridge*, 498 Mich 358, 364-365; 870 NW2d 502 (2015), our Supreme Court held that the mandatory sentencing guidelines violated a defendant's Sixth Amendment, US Const, Am VI, right to a jury trial, and remedied the violation by declaring the guidelines as advisory only. However, the Court held "that a sentencing court must determine the applicable guidelines range and take it into account when imposing a sentence." *Id*. at 365. Sentences that depart from the sentencing guidelines are reviewed for reasonableness. *Id*.

In this case, defendant's minimum guidelines range was assessed at 30 to 62 months. The trial court sentenced defendant to the top end of the guidelines range at 62 months. According to MCL 769.34(10), "[i]f a minimum sentence is within the appropriate guidelines sentence range, the court of appeals shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence." In *People v Schrauben*, 314 Mich App 181, 196 n 1; 886 NW2d 173 (2016), this Court noted that "*Lockridge* did not alter or diminish MCL 769.34(10) . . . ." See also *Posey*, 334 Mich App at 357 (agreeing with the panel's analysis in *Schrauben*). Because defendant does not challenge the scoring of the guidelines or the accuracy of the information that the court relied upon while determining his sentence, this Court must affirm his sentence.

We note that our Supreme Court scheduled oral argument on the application for leave to appeal this Court's decision in *Posey*. In pertinent part, the order requests supplemental briefing addressing the following:

> (2) whether the requirement in MCL 769.34(10) that the Court of Appeals affirm any sentence within the guidelines range, absent a scoring error or reliance on inaccurate information, is consistent with the Sixth Amendment, the due-process right to appellate review, and *People v Lockridge*, 498 Mich 358, 870 NW2d 502

(2015); and, if not, (3) whether the appellant's sentence is reasonable and proportionate. [*People v Posey*, 508 Mich 940 (2021).]

In any event, our Supreme Court has not yet issued a decision in *Posey*. Accordingly, this Court's published decision in *Posey*, 344 Mich App at 356-357, remains binding precedent that panels of this Court must follow. MCR 7.215(J)(1). We specifically find, defendant's within-guidelines sentence was reasonable, appropriate and proportionate given all of the facts and circumstances of this case, and he is not entitled to a remand for resentencing.

## G. REFUSAL TO ADMIT GUILT

Finally, defendant, in his Standard 4 Brief, argues that the trial court improperly imposed a more severe sentence on the basis of his refusal to admit guilt. We disagree.

To preserve a challenge to a sentence that is within the guideline range, the issue must be raised "at sentencing, in a motion for resentencing, or in a motion to remand." *People v Sours*, 315 Mich App 346, 348; 890 NW2d 401 (2016) (quotation marks and citation omitted). In this case, defendant did not raise any argument that his sentence was improperly based on his refusal to admit guilt at sentencing, in a motion for resentencing, or in the motion to remand he filed in this Court. Therefore, this claim is unpreserved.[3] "Unpreserved sentencing errors are reviewed for plain error affecting substantial rights." *People v Meshell*, 265 Mich App 616, 638; 696 NW2d 754 (2005).

"A sentencing court may not base a sentence, even in part, on a defendant's failure to admit guilt, but a lack of remorse can be considered at sentencing." *People v Carlson*, 332 Mich App 663, 675; 958 NW2d 278 (2020) (citations omitted).

> To determine whether sentencing was improperly influenced by the defendant's failure to admit guilt, we focus on three factors: (1) the defendant's maintenance of innocence after conviction; (2) the judge's attempt to get the defendant to admit guilt; and (3) the appearance that had the defendant affirmatively admitted guilt, his sentence would not have been so severe. [*Id*. (quotation marks and citation omitted).]

In this case, it is accurate that the trial court expressed its belief that defendant was guilty and gave defendant the opportunity to be truthful about what happened. However, the trial court also advised defendant that he did not have to say anything and ultimately accepted defense counsel's explanation that any admissions may jeopardize defendant's direct appeal.

Most importantly, the trial court did not give the impression that defendant's sentence would have been less severe if he had admitted guilt. Rather, the trial court sentenced defendant at the top of the minimum guidelines range because it believed that defendant was a danger to society. The trial court explained that it felt bad for both families involved and its belief that

---

[3] Arguably, this claim is unpreserved simply because it was not raised at sentencing. See *Lockridge*, 498 Mich at 392.

defendant had a "sickness." The trial court observed that defendant was not completely honest with those around him about his previous conviction and that probation did not act as a deterrent to his behavior. The trial court ultimately opined that defendant could be a danger upon his release from prison, that the court had the responsibility to impose a significant sentence on the basis of the offense, and that it would feel responsible if defendant hurt someone else.

Considering the trial court's comments at sentencing, although the court initially invited defendant to be truthful about what happened, the court imposed a sentence at the top of the guidelines because it concluded that defendant was a danger to others. The record does not support defendant's assertion that his sentence would have been less severe had he admitted guilt. See *id*. As a result, defendant's sentence was not improper, and he is not entitled to resentencing.

### III. CONCLUSION

There were no errors warranting relief. We affirm.

/s/ Michael J. Riordan
/s/ Jane E. Markey
/s/ James Robert Redford