*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TRENT MITCHELL PERLICH,

        Defendant-Appellant.

UNPUBLISHED
April 6, 2023

No. 358939
Gogebic Circuit Court
LC No. 2020-000187-FC

Before: GADOLA, P.J., and GARRETT and FEENEY , JJ.

PER CURIAM.

Defendant was convicted by a jury of three counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a); MCL 750.520b(2)(b) (sexual penetration of a victim under 13 years of age by defendant 17 years of age or older), and was sentenced to 25 to 50 years' imprisonment for each conviction. Defendant appeals by right. We affirm defendant's convictions and sentences.

## I. FACTS

This case arises from an incident during which defendant, who was 18 years old, sexually penetrated SO, who was 12 years old, three separate times. SO and defendant met on Facebook and communicated on Facebook Messenger, a social media messaging platform, and Snapchat, a social media platform used for sending messages and photos that "disappear" at some point after they are viewed. Before the events at issue took place, SO informed defendant on Facebook that she was 12 years old and defendant told SO he was 15 or 16 years old. SO agreed to meet defendant the night of the incident because defendant stated he merely wanted to "hang out," and that after he picked up SO they would drive to pick up SO's cousin. Defendant arrived at SO's house in the passenger seat of a car driven by his friend. SO got into the backseat of the vehicle and defendant's friend drove in the direction of SO's cousin's house. When defendant's friend began driving in a different direction, defendant climbed in the backseat of the car and sat next to SO. Defendant offered SO several cookies, which SO ate. SO immediately felt "dizzy." Defendant then pulled his pants down, and forced SO to perform oral sex. Defendant then put a condom on, grabbed SO's leg and pushed her on top of him. Defendant "stuck his penis inside of

[SO]," and she begged him to stop. SO made eye contact with defendant's friend during this incident through the vehicle's rearview mirror, but he kept driving. Defendant's friend then dropped SO off at her home.

When SO was at home, defendant messaged her on Snapchat and stated that if she did not come back out with him that night, he would "post a video" that he took. Fearing that defendant would make good on his promise, SO again agreed to leave her home and get into a vehicle with him. At this second encounter, defendant was driving and SO and defendant were the only two individuals in the vehicle. Defendant penetrated SO with his fingers while in the vehicle, and after this incident, SO got out of the vehicle and walked home. When SO got home, defendant messaged her on Facebook and stated, "Do not tell anyone or I'm probably gonna shoot myself. Don't feel like going to prison." SO testified that defendant also messaged her on Snapchat and told her to send him messages on Facebook stating that she "had fun" that night, or else he would post the video he claimed to have made during their first encounter.

Defendant's friend who drove the vehicle during the first incident testified that he saw SO "bouncing" on top of defendant in his mirror while he was driving, and assumed they were having sexual intercourse. Defendant's friend did not see defendant give SO a cookie or see any other sexual acts. A police officer, Deputy Smith, testified that he investigated this incident after receiving an anonymous text message. During two interviews, SO did not inform Deputy Smith of these events. After SO's therapist informed Deputy Smith of the events at issue, Deputy Smith interviewed SO a third time, and she informed him of the sexual assault. SO's mother gave Deputy Smith a screenshot of the Facebook message defendant sent SO.

## II. DISCUSSION

## A. PROSECUTORIAL MISCONDUCT

Defendant contends that the prosecutor improperly vouched for the credibility of the victim and shifted the burden of proof to defendant during closing argument. We disagree.

We note initially that this claim is unpreserved. A claim of prosecutorial error must be raised by a contemporaneous and specific objection. *People v Clark*, 330 Mich App 392, 433; 948 NW2d 604 (2019). Because defendant did not contemporaneously object to the prosecutor's closing argument and request a curative instruction, we review this unpreserved issue for plain error affecting defendant's substantial rights. *People v Isrow*, 339 Mich App 522, 529; 984 NW2d 528 (2021). To avoid forfeiture under the plain error rule, (1) the error must have occurred, (2) the error must be plain, i.e., clear or obvious, (3) and the plain error must have affected the defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). An error is clear or obvious if it is not "subject to reasonable dispute." *People v Randolph*, 502 Mich 1, 10; 917 NW2d 249 (2018). Whether a plain error affected a defendant's substantial rights requires a showing of "prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Carines*, 460 Mich at 763. We review an unpreserved issue of prosecutorial misconduct if a curative instruction "could not have eliminated the prejudicial effect or where the failure to consider the issue would result in a miscarriage of justice." *People v Stanaway*, 446 Mich 643, 687; 521 NW2d 557 (1994); see also MCL 769.26.

Whether a prosecutor committed misconduct depends on whether the defendant was denied a fair and impartial trial. *People v Anderson*, 331 Mich App 552, 565; 953 NW2d 451 (2020). We decide issues of prosecutorial misconduct case by case, evaluating the prosecutor's remarks in the context of the entire record. *Id*. In this case, defendant argues that during closing argument the prosecutor improperly vouched for the credibility of the victim by stating:

> Or, despite all of that, you still follow what this young girl, now 13, told you under oath, bare[d] her soul, literally undressed herself yesterday in front of you, to tell you about all these embarrassing things that were done to her, why in the world would she do that if this did not happen? I can't—I couldn't—I just can't I don't— I couldn't answer that. I'm sorry. Cuz [sic] I don't know. I don't see that happening.

The purpose of closing arguments is to permit the parties' attorneys to comment on the evidence and argue their theories of the case to the jury. *Clark*, 330 Mich App at 433. Prosecutors are given great latitude in their closing arguments and are free to argue the evidence and all reasonable inferences arising from the evidence. *People v Mullins*, 322 Mich App 151, 172; 911 NW2d 201 (2017). In addition, at the conclusion of trial the trial court instructs the jury that the attorneys' arguments are not evidence, see M Crim JI 3.5(3); 3.5(5), and juries are presumed to follow the trial court's instructions. *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998).

A prosecutor may not vouch for the credibility of witnesses by suggesting that he or she has special knowledge of the witness's truthfulness, but the prosecutor is free to argue from the facts that a witness is or is not credible. *Clark*, 330 Mich App at 434. Defendant argues that the prosecutor's statement suggested that the prosecutor had personal knowledge of the victim's credibility. This is not supported when viewing the statement in the context of the prosecutor's entire closing argument. Before making the statement in question, the prosecutor discussed in depth the evidence presented during trial, and argued from the facts that SO's testimony should be believed, which is permissible. See *id*. Contrary to defendant's assertion, the prosecutor did not impermissibly claim special knowledge regarding SO's truthfulness, but instead summarized the facts presented and argued from those facts that the jury should believe SO's testimony.

Defendant also contends that the prosecutor improperly shifted the burden of proof to him during closing argument when the prosecutor stated:

> What's interesting about this case is there's not two sides of the story. There's only one because there's no evidence that contradicts what we presented to you. No evidence to contradict what's presented through the exhibits and the testimony of the victim or [a second witness].

A prosecutor may not comment on the defendant's failure to present evidence, which suggests an attempt to shift the burden of proof. *People v Fyda*, 288 Mich App 446, 464; 793 NW2d 712 (2010). But a prosecutor's argument that inculpatory evidence is undisputed or uncontradicted does not equate to a shifting of the burden of proof to the defendant. *Id*. Additionally, a prosecutor's attack on the credibility of a theory advanced by a defendant does not shift the burden of proof. *People v McGhee*, 268 Mich App 600, 635; 709 NW2d 595 (2005).

Defendant argues that the prosecutor's comment shifted the burden of proof by implying there was no contradictory evidence to the prosecution's case because defendant did not testify. This is not supported by the record when we consider the prosecutor's statement in context. During closing arguments, defendant's counsel stated that there were two versions of the events giving rise to defendant's prosecution, SO's version and defendant's friend's version. Defense counsel emphasized the differences in the two witnesses' testimony in an effort to cast doubt on SO's testimony. In rebuttal, the prosecutor attacked defendant's theory that SO's testimony was not credible by pointing out that defendant's friend had not contradicted SO's version of events, but instead confirmed that a sexual assault had taken place. Countering the defense narrative in this way did not impermissibly shift the burden of proof to defendant. See *McGhee*, 268 Mich App at 635.

Further, the jury was instructed that any statements by the attorneys were not evidence and could not be considered as evidence, that the jury must presume defendant's innocence unless the prosecution proved all the elements of the crime beyond a reasonable doubt, and that defendant did not have to take any actions to prove his innocence and had a right not to testify. Jurors are presumed to follow their instructions, *Graves*, 458 Mich at 486, and the jury instructions thus cured any alleged prejudicial effect.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant contends that his trial counsel provided ineffective assistance because he failed to object to the prosecutor's statements. Because we find no error in the prosecutor's argument, we also reject defendant's contention that his trial counsel was ineffective for failing to object to the argument. See *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018).

We observe that this issue is unpreserved. To preserve an issue of ineffective assistance of counsel, a defendant must either move for a new trial, *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012), or file with this Court a motion for remand for a *Ginther*[1] hearing. *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). Because defendant did neither, this issue is not preserved, and our review of this issue is limited to mistakes apparent on the record. See *Head*, 323 Mich App at 539.

"Criminal defendants are entitled to receive effective assistance of counsel, and they are presumed to have received effective assistance." *People v Ogilvie*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 354355); slip op at 2. Trial counsel is ineffective when "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v Washington*, 466 US 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To obtain a new trial, a defendant must show that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). Trial counsel's decision-making is presumed to be the result of sound trial strategy, *People v White*, 331 Mich App 144, 149; 951

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

-4-

NW2d 106 (2020), and trial counsel is not ineffective for failing to make a futile objection or to advance a meritless argument. *People v Zitka*, 335 Mich App 324, 341; 966 NW2d 786 (2020). Here, because we conclude that the prosecutor's statements during closing argument did not amount to misconduct, we similarly conclude that defense counsel was not ineffective for failing to object to those statements because objecting would have been futile. See *id*.

## C. CONSTITUTIONALITY OF MCL 750.520B(B)(2)

Defendant raises for the first time on appeal that his 25-year mandatory minimum sentence was unconstitutional because it violated his right to be free from cruel and/or unusual punishment. We review this unpreserved issue for plain error affecting defendant's substantial rights. *People v Bowling*, 299 Mich App 552, 557; 830 NW2d 800 (2013). Defendant was sentenced to a mandatory minimum sentence of 25 years' imprisonment under MCL 750.520b(2)(b), which states:

Criminal sexual conduct in the first degree is a felony punishable as follows:

* * *

(b) For a violation that is committed by an individual 17 years of age or older against an individual less than 13 years of age by imprisonment for life or any term of years, but not less than 25 years.

The trial court was required under MCL 750.520b(2)(b) to sentence defendant to a minimum term of 25 years' imprisonment. This Court directly addressed and rejected the argument that a mandatory sentence under MCL 750.520b(2)(b) is cruel or unusual punishment in *People v Benton*, 294 Mich App 191, 203-207; 817 NW2d 599 (2011), and we are bound by that decision. See MCR 7.215(J)(1).

## D. STANDARD 4 BRIEF

In his Standard 4 brief, defendant raises several arguments that are difficult to decipher. Defendant argues that his "due process rights were violated where the prosecution called upon Detective Cody Smith to testify despite his negligence and failure to investigate," that defendant's "[Sixth] Amendment rights to confrontation and ineffective assistance of counsel were violated due to Deputy Cody Smith's testimony not being derived from a sound foundation," that inconsistent statements were admitted into evidence, and that defendant was prejudiced by these errors. Defendant failed to provide authority for his assertions that the prosecutor had a duty to ensure that the police conducted a thorough investigation, or that his trial counsel was ineffective for failing to object to the officer's testimony. Defendant also failed to identify the statements that allegedly were inconsistent. Defendant's arguments are abandoned because he failed adequately to present the merits of his arguments. See *People v Lopez*, 305 Mich App 686, 694; 854 NW2d 205 (2014). We have nonetheless thoroughly reviewed defendant's unpreserved assertions of error, and we discern no plain error.

Affirmed.

/s/ Michael F. Gadola
/s/ Kristina Robinson Garrett
/s/ Kathleen A. Feeney