*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

MICHAEL WILLIAM GOFF,

       Defendant-Appellant.

UNPUBLISHED
May 30, 2024

No. 364331
Ingham Circuit Court
LC No. 18-000929-FC

Before: MARKEY, P.J., and RIORDAN and CAMERON, JJ.

PER CURIAM.

Defendant appeals by right following his jury convictions of two counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) (sexual contact with victim less than 13 years of age), arising out of his repeated and extensive sexual assaults of his daughter, TB, until she was 11 years old. The trial court sentenced defendant to concurrent terms of 120 to 180 months' imprisonment, which exceeded his recommended guidelines range of 43 to 86 months' imprisonment. We affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

Defendant gained sole custody of his daughter, TB, when she was approximately two years old, because TB's mother was unfit to parent her at the time. Defendant began sexually assaulting TB at some point before she was in second grade. The assaults continued essentially weekly, if not more, until TB was 11. Defendant gave TB a cell phone as a reward for letting him ejaculate in her mouth. TB used the cell phone to disclose the assaults to her mother. TB's mother promptly called the police, who removed TB from defendant's home.

Defendant claimed that TB was lying so she could return to her mother and get revenge against defendant for keeping her away from her mother. No evidence in support of this theory was ever adduced. In fact, TB did not return to her mother's care; rather, she was placed in foster care and eventually adopted. The trial court imposed the maximum sentence. It reasoned that defendant's lack of remorse reflected poorly on his potential for rehabilitation. The trial court further concluded that defendant's conduct toward TB as a caretaker and someone in authority was egregious.

## II. TRIAL ISSUES

### A. PRESERVATION AND STANDARDS OF REVIEW

"A defendant must raise an issue in the trial court to preserve it for our review." *People v Heft*, 299 Mich App 69, 78; 829 NW2d 266 (2012). Defendant raises challenges to: (a) the trial court's reference to prospective jurors by number; (b) the trial court asking the witnesses questions; and (c) the prosecutor's statements during closing argument. A trial court's conduct of voir dire is usually reviewed for an abuse of discretion. *People v Williams*, 241 Mich App 519, 522; 616 NW2d 710 (2000). Questions involving judicial misconduct or prosecutorial error are typically reviewed de novo. *People v Stevens*, 498 Mich 162, 168; 869 NW2d 233 (2015); *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Because defendant did not object to any of these issues in the trial court proceedings, they are unpreserved for our review. *Heft*, 299 Mich App at 78.

We review unpreserved issues for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999).

> To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. [*Id*. at 763.]

Defendant also contends his trial counsel was ineffective. A defendant preserves a claim of ineffective assistance by moving "for a new trial or an evidentiary hearing." *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018). Defendant's ineffective assistance claim is unpreserved because he did not do either of these things. *Id*. Our review of unpreserved claims of ineffective assistance of counsel "is limited to errors apparent on the record." *People v Unger*, 278 Mich App 210, 253; 749 NW2d 272 (2008).

### B. JURY SELECTION

Defendant first argues the trial court erred by employing an "anonymous jury." Defendant speculates that referring to jurors by number during jury selection eroded the presumption of innocence and requires a new trial. We disagree.

"An 'anonymous jury' is one in which certain information is withheld from the parties, presumably for the safety of the jurors or to prevent harassment by the public." *Williams*, 241 Mich App at 522.

> The courts have recognized that the use of an 'anonymous jury' may promote the safety of prospective jurors, but at a potential expense to two interests of the defendant: (1) the defendant's interest in being able to conduct a meaningful examination of the jury and (2) the defendant's interest in maintaining the presumption of innocence. [*Id*. at 522-523.]

"In order to successfully challenge the use of an 'anonymous jury,' the record must reflect that the parties have had information withheld from them, thus preventing meaningful voir dire, or that the presumption of innocence has been compromised." *Id*. at 523. A jury is not "anonymous" unless jurors' biographical information is withheld from the parties, and merely referring to the jurors by number instead of by name does not make the jury "anonymous." *People v Hanks*, 276 Mich App 91, 93; 740 NW2d 530 (2007).

Defendant emphasizes the trial court's use of juror numbers as evidence that his jury was anonymous. He claims that the practice implied to the jury that defendant was a dangerous person, violating his presumption of innocence. The trial court's practice of referring to jurors by numbers does not make a jury anonymous. Some of the questions asked during voir dire suggest that the parties had the jurors' biographical information during jury selection. Defendant did not conduct searching inquiries during voir dire, but there is nothing in the record to suggest that he could not have done so. Cf. *Hanks*, 276 Mich App at 94. Furthermore, a large number of prospective jurors were called, and the trial court explained that its use of numbers was to keep track of them. This practice did not constitute an anonymous jury, nor did it compromise defendant's presumption of innocence.

## C. JUDICIAL QUESTIONS TO WITNESSES

Defendant next argues that the trial court pierced the veil of judicial impartiality and prejudiced the defense by asking several witnesses questions. We disagree.

The question of judicial impartiality must be considered under the totality of the circumstances and "requires a fact-specific analysis." *Stevens*, 498 Mich at 171-172. This includes, but is not limited to, the following five considerations:

> [T]he nature of the judicial conduct, the tone and demeanor of the trial judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions. [*Id*. at 172.]

Under the first consideration, trial judges may appropriately "question witnesses to produce fuller and more exact testimony or elicit additional relevant information[,]" but, "[i]t is inappropriate for a judge to exhibit disbelief of a witness, intentionally or unintentionally." *Id*. at 173-174. Further, a judge must "not permit his own views on disputed issues of fact to become apparent to the jury." *Id*. at 174 (quotation marks and citation omitted). The second consideration is "the tone and demeanor the trial judge displayed in front of the jury." *Id*. A trial court must avoid asking questions in a hostile, intimidating, argumentative, or skeptical manner. *Id*. at 175. The third consideration is to consider the judge's questioning in the context of the trial. *Id*. at 176. A trial judge may appropriately ask more questions in a lengthy or complicated trial, or if a witness testifies regarding "a topic that is convoluted, technical, scientific, or otherwise difficult for a jury to understand." *Id*. The fourth consideration is whether the trial court asked the parties' witnesses questions disproportionately—that is, whether the trial court subjected one side's witnesses to harsher questioning than the other, risking improper jury influence. *Id*. at 176-177. Lastly, the final consideration is the presence or absence of curative instructions, including whether the trial court's conduct was so egregious that no curative instruction would be sufficient. *Id*. at 177-178.

The trial court's questions of the witnesses did not violate these considerations. The record shows that the trial court asked questions of all but one of the witnesses. Defendant does not assert that any of the trial court's questioning was conducted in a hostile tone or manner, and no such inappropriate manner is apparent from the transcripts. Furthermore, defendant does not explain why any of the questions were inappropriate, thereby abandoning this claim. *People v Thurmond*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 361302); slip op at 8. In any event, it is clear that the trial court asked witnesses to clarify answers on several occasions, which it was permitted to do.

Defendant also claims that his trial counsel was ineffective by failing to object to the trial court's questions. Because there is no basis for concluding that any such objections would have been meritorious, counsel cannot have been ineffective for failing to object. *People v Leffew*, 508 Mich 625, 638; 975 NW2d 896 (2022) ("Defense counsel is not ineffective for failing to advance a meritless or frivolous argument.").

## D. PROSECUTOR'S CLOSING ARGUMENT

Defendant next argues the prosecutor impermissibly denigrated defense counsel during closing argument. We disagree.

A prosecutor may not argue to the jury that defense counsel was intentionally trying to mislead the jury. *Unger*, 278 Mich App at 236-238. "A prosecutor cannot personally attack the defendant's trial attorney because this type of attack can infringe upon the defendant's presumption of innocence." *People v Kennebrew*, 220 Mich App 601, 607; 560 NW2d 354 (1996). Nevertheless, the prosecutor may "argue from the facts that defendant or defendant's witnesses were unworthy of belief[,]" and merely referring to "defense counsel's arguments as 'red herrings' " is not necessarily improper. *People v Dobek*, 274 Mich App 58, 67; 732 NW2d 546 (2007). "[P]rosecutorial arguments regarding credibility are not improper when based on the evidence, even if couched in terms of belief or disbelief." *Unger*, 278 Mich App at 240. "[A]n otherwise improper remark may not rise to an error requiring reversal when the prosecutor is responding to the defense counsel's argument." *Kennebrew*, 220 Mich App at 608. The prosecutor may properly comment on weaknesses in the defense's proofs. *People v Fields*, 450 Mich 94, 115-116; 538 NW2d 356 (1995). The prosecutor may also address weaknesses in the defense's theory of the case, including "characteriz[ing] the defense's arguments as a distraction," so long as the prosecutor does not suggest that defense counsel does not believe the defendant. *People v Fyda*, 288 Mich App 446, 462; 793 NW2d 712 (2010).

Defendant's theory of the case was that TB was lying. He chose to testify on his own behalf, denying that the sexual assaults took place. During closing argument, the prosecutor argued: "The defendant calls [TB] a liar, but he's the one that tried to mislead you." In context, this was an attack on defendant's own testimony rather than an attack on defense counsel. This comment was preceded by the prosecutor's statement that the trial court would instruct the jury regarding how to decide credibility, and the prosecutor immediately went on to argue that defendant's testimony was and should be deemed unbelievable. Specifically, the prosecutor pointed out that defendant initially tried to claim that his work schedule permitted him no opportunity to abuse TB, but it turned out that the work schedule he cited lasted only a year and a half. The prosecutor also challenged defendant's claim that he never punished TB, or, if actually

true, that this was consistent with expert testimony regarding grooming. The prosecutor fairly commented on the implausibility and inconsistencies in defendant's testimony to argue that defendant's *testimony* should be deemed unworthy of belief. *Dobek*, 274 Mich App at 67; *Unger*, 278 Mich App at 240.

The prosecutor also argued that defense counsel was "very skilled and very experienced," was "trying to make [the jury's] job more difficult" and "divert [its] focus," and that the defense's arguments were "a diversion to get [the jury's] eye[s] off the ball." But these arguments by the prosecutor did not suggest that defense counsel was trying to mislead the jury in the sense that he was lying or being untruthful; in other words, that defense counsel did not actually believe defendant. *Fyda*, 288 Mich App at 462. Importantly, defense counsel repeatedly argued during opening statements that the case was about TB wishing to return to her mother, wishing to seek revenge against defendant as the reason she could not be with her mother, common sense, and that TB was lying. The prosecutor fairly responded to that argument. *Kennebrew*, 220 Mich App at 608. In context, the prosecutor pointed out that defendant had failed to provide any factual support, whatsoever, for his theory of the case. Doing so is not improper argument, even if phrased as "characteriz[ing] the defense's arguments as a distraction." *Fyda*, 288 Mich App at 462.

The prosecutor did not exceed the bounds of permissible argument because he did not argue that trial counsel was being dishonest. The prosecutor merely pointed out that *defendant* was being dishonest, and that the defense's theory of the case was unsupported. Defendant again argues that he received ineffective assistance of counsel because trial counsel did not object to the prosecutor's statements, but, because the prosecutor's statements were not improper, any objection would have been meritless. *Leffew*, 508 Mich at 638.

III. SENTENCING ISSUES

A. STANDARDS OF REVIEW

"This Court reviews for clear error a trial court's findings in support of [a] particular score under the sentencing guidelines but reviews de novo whether the trial court properly interpreted and applied the sentencing guidelines to the findings." *People v McFarlane*, 325 Mich App 507, 531-532; 926 NW2d 339 (2018). "Under the sentencing guidelines, a trial court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Abbott*, 330 Mich App 648, 654; 950 NW2d 478 (2019). "Clear error exists when we are left with a definite and firm conviction that a mistake was made." *Id*.

But, "[a] sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). "[T]he standard of review to be applied by appellate courts reviewing a sentence for reasonableness on appeal is abuse of discretion." *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). The "key test" is "whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *People v Posey*, 512 Mich 317, 348; 1 NW3d 101 (2023) (BOLDEN, J., joined by BERNSTEIN, J., with CAVANAGH and WELCH, JJ., concurring in relevant part) (quotation marks, brackets, and citation omitted); see also *People v Guichelaar*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 363588); slip op at 3. "A trial court abuses its discretion when it applies a minimum sentence

-5-

that violates the principle of proportionality, which occurs when the trial court fails to provide adequate reasons for the extent of the departure sentence imposed." *People v Warner*, 339 Mich App 125, 153-154; 981 NW2d 733 (2021) (quotation marks, brackets, ellipses, and citation omitted).

## B. OV 10

Defendant first challenges his sentences by arguing the trial court improperly assessed Offense Variable (OV) 10, which is assessed on the basis of the exploitation of a vulnerable victim. MCL 777.40. We disagree.

As an initial matter, there can be no dispute that TB was "vulnerable" for purposes of OV 10.[1] See *People v Ziegler*, 343 Mich App 406, 412; 997 NW2d 493 (2022) (determining no plausible argument existed that the defendant's six-year-old daughter was not "vulnerable" under OV 10). "Predatory conduct" is "behavior that precedes the offense, and is directed at a person for the primary purpose of causing that person to suffer from an injurious action or to be deceived." *People v Haynes*, 338 Mich App 392, 437; 980 NW2d 66 (2021) (quotation marks, brackets, and citation omitted). For purposes of OV 10, "predatory conduct" is limited to "only those forms of preoffense conduct that are commonly understood as being predatory in nature, e.g., lying in wait and stalking, as opposed to purely opportunistic criminal conduct or preoffense conduct involving nothing more than run-of-the-mill planning to effect a crime or subsequent escape without detection." *People v Huston*, 489 Mich 451, 462; 802 NW2d 261 (2011) (quotation marks and citation omitted).

Defendant generally argues that there was no evidence of when the assaults occurred, so there can be no evidence that he engaged in preoffense conduct. But, the evidence established that the assaults were similar to each other and occurred anywhere from weekly to four times a week for several years. Furthermore, TB was able to distinguish between assaults that occurred before and after she and defendant swapped bedrooms when she was in second grade. The record is replete with evidence that defendant groomed TB, with actions ranging from exposing her to pornography, isolating her, withholding punishment, giving her gifts, and impliedly threatening her. Grooming a victim may constitute predatory conduct. *People v Steele*, 283 Mich App 472, 491-492; 769 NW2d 256 (2009). Similarly, isolating a victim is evidence of predatory conduct. *People v Ackah-Essien*, 311 Mich App 13, 37; 874 NW2d 172 (2015). The trial court, therefore, did not clearly err by finding that defendant engaged in predatory conduct toward TB before the assaults for which he was convicted, and correctly assessed OV 10 at 15 points.

## C. EXTENT OF DEPARTURE

Defendant finally challenges his sentence by arguing the trial court failed to justify the length of the sentence it imposed. We disagree.

---

[1] "Vulnerability" is defined as, "readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation." MCL 777.40(2)(c).

"It is the trial court's duty to exercise discretion in a way that ensures the individualized sentence conforms with the principle of proportionality." *People v Boykin*, 510 Mich 171, 183; 987 NW2d 58 (2022). "An appropriate sentence should give consideration to the reformation of the offender, the protection of society, the discipline of the offender, and the deterrence of others from committing the same offense." *Id.*

> [R]elevant factors for determining whether a departure sentence is more proportionate than a sentence within the guidelines range continue to include (1) whether the guidelines accurately reflect the seriousness of the crime; (2) factors not considered by the guidelines; and (3) factors considered by the guidelines but given inadequate weight. [*People v Johnson*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 362236); slip op at 5 (quotation marks, brackets, and citation omitted).]

Trial courts need not "sentence defendants with mathematical certainty. Nor are any precise words necessary for them to justify a particular departure." *People v Smith*, 482 Mich 292, 311; 754 NW2d 284 (2008) (footnotes and citation omitted). However, the "trial court must justify the sentence imposed in order to facilitate appellate review, which includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017) (quotation marks and citations omitted).

In exceeding the recommended guidelines range, the trial court reasoned that defendant showed little potential for rehabilitation, and balanced this with the correspondingly great need to protect society from him. According to the trial court, defendant showed no remorse for anyone "except for himself." Although a trial court may not base its sentence "even in part on a defendant's refusal to admit guilt," a defendant's "lack of remorse can be considered in determining [their] potential for rehabilitation." *Dobek*, 274 Mich App at 104. The trial court properly considered defendant's lack of remorse for the limited purpose of evaluating his rehabilitative potential. The trial court found TB's testimony credible and defendant's testimony incredible and observed that defendant groomed TB as her caretaker and as a person in authority. Defendant contends that his crimes were insufficiently egregious to warrant any departure from the sentencing guidelines—a claim plainly belied by the record. The trial court did not clearly err by finding that the egregiousness of defendant's mistreatment of TB could not be fully accounted for by the sentencing guidelines. Therefore, the trial court did not err by imposing a longer sentence.

Affirmed.

/s/ Jane E. Markey
/s/ Michael J. Riordan
/s/ Thomas C. Cameron