*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

EDWIN MAURICE JENKINS,

      Defendant-Appellant.

UNPUBLISHED
March 13, 2026
12:13 PM

No. 368656
Macomb Circuit Court
LC No. 2022-001071-FC

Before: GADOLA, C.J., and MURRAY and YATES, JJ.

PER CURIAM.

Defendant was convicted after a jury trial of four counts of first-degree criminal sexual conduct (CSC-I) (victim under the age of 13), MCL 750.520b. Defendant was sentenced to concurrent terms of 25 to 40 years' imprisonment for each of the CSC-I convictions. Defendant appeals as of right, and we affirm.

## I. FACTS

In 2020, defendant's then 12-year-old daughter reported that defendant had frequently and repeatedly sexually assaulted her from the time she was 3 until she was 11 years old. She could not recall the details of all the assaults, but she described in detail four specific instances of sexual assault. At trial, the victim testified that when she was three years old, defendant removed her pants and underwear and rubbed her vagina with his hands and penis. When she was approximately seven years old, defendant entered her bedroom while she pretended to be asleep, removed her clothing, and rubbed between her butt cheeks with his penis[1] and ejaculated on her back. She testified that when she was 11 years old and at defendant's home, defendant took her to his bedroom and told her to her remove her clothes; she performed oral sex on defendant, and defendant then performed oral sex on her. Again while she was 11 years old, the victim was in

---

[1] The victim testified that on other occasions, defendant penetrated her anus with his penis.

the bathroom of defendant's home when defendant attempted to penetrate her vagina with his penis but was unable to do so.

In 2020, the victim's mother died. Defendant and the victim's mother had divorced many years earlier. After her mother's death, the victim moved from her mother's home to defendant's home in North Carolina. At trial, the victim testified that while in North Carolina defendant told her to perform oral sex on him, but she refused and later told a friend about the abuse. About six months later, the victim returned to Michigan to live with her maternal grandmother. After the victim returned to Michigan, Detective Michael Chirco of the Clinton Township Police Department investigated the victim's claims of sexual abuse. The victim underwent a forensic interview and underwent a physical examination by Dr. Ryan Surujdeo at the Detroit Medical Center. Defendant thereafter was charged with four counts of CSC-I.

At trial, Dr. Surujdeo testified as a lay witness about his findings during the victim's examination. Although he had not been qualified at trial as an expert witness, he also provided his general medical opinion related to his lay witness testimony concerning certain sexual abuse injuries. Defense counsel did not object.

During closing argument, the prosecutor stated that the victim, who was 15 years old at the time of trial, had testified describing the texture and taste of semen, which the prosecutor argued was knowledge that the victim would have only if she had experienced it. Defense counsel did not object but argued that the victim could have acquired this information from the internet. The jury found defendant guilty as charged.

Defendant moved for a new trial and requested a hearing under *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973), arguing that (1) the prosecutor improperly shifted the burden of proof to defendant during closing argument, and that (2) defense counsel was ineffective for failing to object to the prosecutor's closing argument and to Dr. Surujdeo's improper expert testimony. The trial court denied defendant's motion, determining that Dr. Surujdeo improperly provided expert testimony but that the error was harmless. The trial court also determined that the prosecutor's closing argument was not improper. Defendant now appeals.

## II. DISCUSSION

### A. PROSECUTORIAL ERROR

Defendant argues that he was denied a fair trial because the prosecutor made improper comments during closing argument. We disagree that error warranting reversal occurred.

Because defendant did not object contemporaneously to the prosecutor's statement and request a curative instruction, we review this unpreserved issue for plain error affecting defendant's substantial rights, meaning that the error affected the outcome of the lower court proceedings. See *People v Isrow*, 339 Mich App 522, 529; 984 NW2d 528 (2021). Reversal is warranted only if the plain error resulted in the conviction of an innocent person or if the error "seriously affected the fairness, integrity, or public reputation of judicial proceedings." *People v Jarrell*, 344 Mich App 464, 482; 1 NW3d 359 (2022) (quotation marks and citation omitted).

During closing argument the prosecution typically is given great latitude and permitted to argue the evidence and the reasonable inferences of the evidence as it relates to the prosecution's theory of the case. *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008). This Court evaluates claims of prosecutorial error case by case and in the context of the record. *People v Jackson*, 313 Mich App 409, 425-426; 884 NW2d 297 (2015).

In this case, during closing argument the prosecutor commented that the victim testified regarding the texture and taste of semen. The prosecutor argued that this testimony supported the victim's claims because the only way she would know the taste of semen was if she experienced it. Given the victim's young age and the specificity of her knowledge, this was a reasonable inference that the prosecutor was permitted to make. Because the prosecutor's comment was formed on the basis of the victim's testimony and was a reasonable inference, there was no error. See *Unger*, 278 Mich App at 236. In addition, the trial court in this case instructed the jury that the lawyers' arguments were not evidence, and jurors are presumed to follow their instructions. *Id*. at 235.

Defendant argues, however, that the prosecutor impermissibly shifted the burden of proof to him when she argued in closing as follows:

> Now, I had mentioned that she displayed a great amount of sexual knowledge, a great amount of sexual relationship knowledge with another person's sexuality. There was no evidence again whatsoever, the only time it was brought up was here. There's no evidence that she [had] been exposed to that stuff online and she was asked that question. And what she said, well, I have health class and that did help me understand better how those private parts functioned. Could have gone into with her what internet did you look at, do you watch porn on the internet, have you seen anything anywhere else, that was never talked about, there is no evidence of that whatsoever so you can't just assume it just because she's a teenager. You cannot just assume it. That was not evidence so it's not something that you can consider.

"A prosecutor may not imply in closing argument that the defendant must prove something or present a reasonable explanation for damaging evidence because such an argument tends to shift the burden of proof." *People v Fyda*, 288 Mich App 446, 463-464; 793 NW2d 712 (2010). "Also, a prosecutor may not comment on the defendant's failure to present evidence because it is an attempt to shift the burden of proof." *Id*. at 464. "However, a prosecutor's argument that inculpatory evidence is undisputed does not constitute improper comment." *Id*. "A prosecutor may also argue that the evidence was uncontradicted even if the defendant is the only person who could have contradicted the evidence." *Id*. In this case, the prosecutor was allowed to argue that the victim's uncontested statements regarding her sexual knowledge suggested that the sexual assaults had occurred.

Defendant argues that he was precluded by Michigan's rape shield statute from introducing evidence to explain that the victim's testimony of specific sexual knowledge arose from her use of the internet. We disagree. Generally, the rape-shield statute prohibits the admission of evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct. *People v Sharpe*, 502 Mich 313,

327; 918 NW2d 504 (2018). The statute thereby "serves to limit the admissibility of evidence of a complainant's sexual conduct" and "protects the privacy of the alleged victim." *Sharpe*, 502 Mich at 325-326.

Defendant has not demonstrated that questioning the victim about her internet usage would have been tantamount to introducing evidence of specific instances of the victim's sexual conduct. Moreover, defendant addressed the issue of the victim's internet usage during cross-examination of Detective Chirco, who explained that the victim was using a social media platform where she represented herself as older than she was. Defendant also addressed the victim's internet use during closing argument arguing that one way a young person could learn about sexual relationships was through the internet. We conclude that the trial court did not err by finding that the prosecutor did not make improper statements during closing argument that denied defendant a fair trial.

## B. INEFFECTIVE ASSISTANCE

Defendant argues that the trial court abused its discretion by denying his motion for new trial on the basis that defense counsel was ineffective. We disagree.

We review a trial court's decision to grant or deny a motion for new trial for an abuse of discretion, which occurs when the trial court's decision falls outside the range of principled outcomes. *People v Johnson*, 502 Mich 541, 564; 918 NW2d 676 (2018). A trial court also necessarily abuses its discretion when it makes an error of law. *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2017). We review de novo the legal question of what standard applies. *People v Walters*, 266 Mich App 341, 352; 700 NW2d 424 (2005).

Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law; we review the trial court's findings of fact for clear error, while reviewing rulings of constitutional law de novo. *People v Yeager*, 511 Mich 478, 487; 999 NW2d 490 (2023). Here, defendant preserved his challenge to the effectiveness of his representation at trial by moving for a new trial or evidentiary hearing, but because no *Ginther* hearing was held this Court's review is limited to mistakes apparent on the record. See *People v Miller*, 326 Mich App 719, 726; 929 NW2d 821 (2019).

A criminal defendant is guaranteed the right to counsel, US Const, Am VI; Const 1963, art 1, § 20, which includes the right to the effective assistance of counsel, *Yeager*, 511 Mich at 488. To establish a claim of ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness, and that but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different. *Id*. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (quotation marks and citations omitted).

In doing so, the defendant must establish the factual predicate for the claim that counsel was ineffective. *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014). The effective assistance of counsel is presumed, and the defendant bears the burden of proving that counsel was ineffective. *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018). To demonstrate that counsel was ineffective, the defendant must overcome the strong presumption that counsel's

performance arose from sound trial strategy. *People v Cooper*, 309 Mich App 74, 80; 867 NW2d 452 (2015). Counsel is not considered to be ineffective merely because a trial strategy was unsuccessful. *People v White*, 331 Mich App 144, 149; 951 NW2d 106 (2020).

Before the trial court, defendant moved for a new trial arguing that defense counsel was ineffective by failing to object to Dr. Surujdeo's testimony. Defendant argued that the doctor improperly gave his expert opinion despite not being qualified to testify as an expert. The trial court determined that defendant did not preserve his challenge to Dr. Surujdeo's testimony by failing to timely object, and the trial court therefore analyzed defendant's challenge under the "plain error" standard.

However, defendant was not challenging the doctor's testimony but rather was arguing that his counsel had been ineffective for failing to object to the improper testimony. As stated, the proper test of whether counsel was ineffective is whether counsel's performance fell below an objective standard of reasonableness, and whether but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different. *Yeager*, 511 Mich at 488. Here, the trial court analyzed whether Dr. Surujdeo's testimony was improper as an unpreserved evidentiary challenge but did not properly analyze whether defense counsel was ineffective for failing to object to the doctor's testimony. As noted, a trial court abuses its discretion when it makes an error of law. *Franklin*, 500 Mich at 100. Nonetheless, we will not reverse the trial court when it reaches the right result but for the wrong reason. *People v Hawkins*, 340 Mich App 155, 195; 985 NW2d 853 (2022).

We agree that Dr. Surujdeo made certain statements of medical opinion without being qualified as an expert under MRE 702. "The party offering the expert testimony bears the burden of satisfying MRE 702 and establishing admissibility of the proposed evidence." *People v Bowden*, 344 Mich App 171, 188; 999 NW2d 80 (2022). However, under MRE 701 a lay witness may give opinion testimony that helps to establish a clear understanding of the witness' testimony or the determination of a fact in issue, though generally, the lay opinion testimony must not derive from scientific, technical, or other specialized knowledge. See *People v Dobek*, 274 Mich App 58, 77; 732 NW2d 546 (2007). But when a lay witness provides opinion testimony based on his or her personal experience and knowledge and the witness could have been qualified as an expert, error in failing to qualify that witness as an expert may be considered harmless. See *id*. at 76-79.

In this case, Dr. Surujdeo was not qualified by the trial court to testify as an expert; to the extent that he offered his opinion, that lay opinion testimony is governed by MRE 701. Dr. Surujdeo testified regarding his education and experience, and because he conducted the victim's physical examination, he was able to provide his opinion about his observations. MRE 701(a). Dr. Surujdeo also testified about the regenerative rates of tissue and trauma incurred from vaginal penetration and indicated that he did not expect to find any trauma during his examination of the victim. He testified:

> Given [the victim's] disclosure of being assaulted over a year ago, there would've been no tissue damage, no scarring, nothing that would be acute that I would have been able to see. . . . With an internal exam, given her disclosure of having been assaulted over a year ago, there would've been nothing that would have shown during my examination. All the tissue would've healed.

Dr. Surujdeo also opined that the human body heals quickly after assaults, that the hymen is mucosal tissue and can be damaged through nonsexual or nonpenetrative trauma, and that the tissue cannot be permanently scarred. Dr. Surujdeo also opined about the potential result of the victim's internal-genital examination, while admitting that he did not perform that examination on the victim. With regard to Dr. Surujdeo's opinions resting on his own rational perceptions and which are helpful to explain his own testimony, such opinions were admissible under MRE 701 and we find no error. Further, because the record suggests that Dr. Surujdeo could have been qualified as an expert in sexual assault examinations, any error in the admission of his medical opinions in the form of lay witness testimony was harmless. See *Dobek*, 274 Mich App at 76-79. We therefore cannot conclude that counsel's performance fell below an objective standard of reasonableness because counsel failed to object, nor that there is a reasonable probability that the outcome would have been different had an objection been made. See *Yeager*, 511 Mich at 488.

Defendant also argues that the trial court did not provide the jury with M Crim JI 5.10, which instructs the jury regarding expert opinion testimony. However, the trial court instructed the jury that "[y]ou must decide which witnesses you believe and how important you think their testimony is. You do not have to accept or reject everything a witness says." Moreover, the jury was aware Dr. Surujdeo was not an expert because both he and the prosecutor stated that was not testifying as an expert. While defendant claims Dr. Surujdeo's testimony "overrode the jurors' common sense," the trial court clearly instructed the jury that it was permitted to ignore or accept the testimony of any witness.

Defendant also contends that defense counsel was ineffective because he failed to object to the prosecutor's statements during closing argument that the victim's knowledge of semen suggested she experienced the alleged abuse, and that the implication was unrefuted, which defendant argues was tantamount to improperly shifting the burden of proof to defendant. As discussed, prosecutors generally are afforded great latitude regarding their arguments at trial and are free to argue the evidence and the reasonable inferences arising from the evidence. *Unger*, 278 Mich App at 236. The prosecutor's suggestion that the victim's testimony regarding sexual details indicated that the sexual assaults had occurred was a reasonable inference arising from the evidence and did not impermissibly shift the burden of proof to defendant. Defense counsel therefore was not ineffective for failing to object to the prosecutor's statement. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) (counsel is not ineffective for failing to advance a meritless argument or raise a futile objection). The trial court did not err by denying defendant's motion for a new trial.

Affirmed.

/s/ Michael F. Gadola
/s/ Christopher M. Murray
/s/ Christopher P. Yates